*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0132p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

   *Plaintiff-Appellee,*

  *v.*

          No. 06-5605

DAVID S. MARTIN,

   *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 05-00013—Jennifer B. Coffman, Chief District Judge.

Argued: February 7, 2008

Decided and Filed: March 31, 2008

Before: NORRIS, BATCHELDER, and GIBBONS, Circuit Judges.

---

## COUNSEL

**ARGUED:** Roger W. Kirk, Cincinnati, Ohio, for Appellant. Terry M. Cushing, ASSISTANT UNITED STATES ATTORNEY, Louisville, Kentucky, for Appellee. **ON BRIEF:** Roger W. Kirk, Cincinnati, Ohio, for Appellant. Terry M. Cushing, Monica Wheatley, ASSISTANT UNITED STATES ATTORNEYS, Louisville, Kentucky, for Appellee.

---

## OPINION

---

  ALICE M. BATCHELDER, Circuit Judge. The principal issue in this appeal is whether the district court's permitting a police officer to testify as both an expert and a fact witness, without the court's issuing a cautionary instruction to the jury, constitutes reversible error, pursuant to *United States v. Lopez-Medina*, 461 F.3d 724 (6th Cir. 2006). Because we find that it does not, and because the appellant's other arguments lack merit, we AFFIRM the district court's judgment.

### I.

  David Martin was a crack dealer in Louisville, Kentucky. The police set up two controlled buys during which a confidential informant purchased 1.5 and 1.39 grams of crack, respectively. The police obtained a warrant to search Martin's residence, an apartment leased to one Susan Tyson. During the search, the police found and seized 5.16 grams of crack cocaine, drug paraphernalia, a 9 mm handgun with ammunition, some .357 caliber ammunition, and a phone bill addressed to

Martin at that address.  When the police later attempted to arrest Martin, he fled on foot but was quickly apprehended.  The police found 3.21 grams of crack cocaine in his possession.

A federal grand jury indicted Martin on seven counts:  two counts of distributing crack cocaine; one count of being a felon in possession of a handgun; two counts of possessing crack cocaine with the intent to distribute; one count of possessing a handgun in furtherance of drug trafficking; and criminal forfeiture of $870 in currency and a 9 mm handgun seized from the apartment.  The case went to trial and a jury convicted Martin on five counts, but acquitted him on the gun-in-furtherance-of-trafficking charge.  The court convicted him on the forfeiture charge when Martin chose not to oppose it.  Martin now appeals.

## II.

### A.

Martin argues that the district court erred by allowing a police officer to testify as both an expert in drug trafficking and as a fact witness, because the court did not draw a clear line of demarcation between the two types of testimony or issue a cautionary instruction to the jury about the difference between expert and fact testimony.  Martin neither raised any objection in the district court nor requested any cautionary instruction.

An appellant who fails to object in the district court forfeits the right to protest the error on appeal and we review the claim for plain error.  *See* Fed. R. Crim. P. 52(b).  Under the plain error standard, we may reverse if (1) there was error that (2) was plain, (3) affected a substantial right, and (4) "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Oliver*, 397 F.3d 369, 378 (6th Cir. 2005) (citing *United States v. Olano*, 507 U.S. 725, 732 (1993)).  Whether the trial court committed plain error always depends on the specific facts of the case at hand.  *Clark v. Maggio*, 737 F.2d 471, 479 (5th Cir. 1984) ("Since the existence of plain error depends on the facts of the particular case, our holding that introduction of [the] confession constituted plain error in no way creates a hard and fast rule."); *see also United States v. Blasingame*, 219 F. App'x. 934, 943 (11th Cir. 2007) ("Moreover, as the prejudice element of the plain error test heavily depends on the facts of the particular case, there can be no hard and fast rule that will apply to every case.").

In *United States v. Lopez-Medina*, 461 F.3d 724, 743 (6th Cir. 2006), we considered a defendant's claim that the district court had erred "by allowing [two DEA] agents to testify as both fact and expert witnesses without giving the jury a cautionary instruction regarding their dual roles." Because Lopez-Medina had failed to object in the district court, we reviewed his claim for plain error.  *Id*. (citing *Johnson v. United States*, 520 U.S. 461, 466-67 (1997)).  We determined that a cautionary instruction was necessary "to guard against the risk of confusion inherent when a law enforcement agent testifies as both a fact witness and as an expert witness." *Id*. at 744.  Absent a cautionary instruction, a "clear demarcation between expert and fact witness roles . . . may ameliorate the risk of jury confusion regarding dual role testimony." *Id*.  But:

> Because there was no cautionary jury instruction regarding the [DEA] agents' dual witness roles nor a clear demarcation between their fact testimony and expert opinion testimony, we conclude that the district court committed an error that was plain or obvious in permitting the dual-role testimony.

*Id*. at 745.  Having found the first two requirements for plain-error, we turned to the third:

> [W]e conclude that the district court's error in its jury instruction, in conjunction with the other evidentiary errors we find occurred in Medina's trial, may have

affected the outcome of his trial and therefore warrants a reversal of his conviction. Thus, Medina can establish an effect on his substantial rights.

*Id*.  And, the fourth requirement:

>We conclude that permitting [these DEA agents] to testify as experts in their own investigations and give opinion testimony on the significance of evidence they have collected, absent any cautionary instruction, threatens the fairness, integrity, and public reputation of judicial proceedings, regardless of whether the defendant is actually innocent.

*Id*.  Thus, we found reversible error and vacated Lopez-Medina's conviction. *Id*. at 752.

We examine the present case in light of *Lopez-Medina*, mindful that "plain error depends on the facts of the particular case," *Clark*, 737 F.2d at 479, and that "there can be no hard and fast rule that will apply to every case." *Blasingame*, 219 F. App'x. at 943.  In the present case, two police officers testified to the circumstances of two controlled purchases by a confidential informant of crack cocaine from Martin.  The first officer testified in detail to the pre-buy search of both the informant and the vehicle he was driving on each of these occasions, the officer's personal surveillance of Martin during the entire period of each of the controlled purchases, and the informant's delivery to the officer of the crack purchased.  That officer also testified to the search of Ms. Tyson's apartment pursuant to the search warrant and detailed the evidence obtained there connecting Martin to the apartment.  The officer then explained the significance in the drug trade of some of those items of evidence, such as digital scales, baggies, razor blades, and firearms, and opined that the quantities of crack found in the apartment were consistent with distribution and exceeded the amounts typically possessed for personal use.  The second officer gave much more abbreviated testimony about the surveillance and the controlled buys, but the district court sustained the defendants' objection — on the ground that it was cumulative — to the officer's testimony about the significance of the drug quantities and the scales and razor blades.

Martin's counsel did not object to any of this testimony because of its expert character, or ask for a cautionary jury instruction, and the court did not give any such instruction.  After carefully reviewing the testimony, we conclude that the fact and expert testimony here is not nearly so thoroughly intertwined as it was in *Lopez-Medina*, but neither is the line of demarcation between the two indisputably clear.  But, even assuming we were to conclude that the demarcation is insufficient and this situation involves "an error that was plain or obvious in permitting the dual-role testimony," *Lopez-Medina*, 461 F.3d at 745, we are still left with the question of whether this purported error affected Martin's substantial rights.  In *Lopez-Medina*, we found such an effect based on the district court's error in its jury instruction, *in conjunction with the other evidentiary errors*." *Id*. (emphasis added).  In the present case, there are no other evidentiary errors.  Thus, any error in this case necessarily had less effect than the error in *Lopez-Medina*.

Looking at this claim of plain error in the context of the particular facts of this case, the dual testimony here is insufficient to "show[] an actual effect on the outcome of the case." *Id*. (citing *United States v. Jones*, 108 F.3d 668, 672 (6th Cir. 1997) (en banc)).  The evidence of Martin's guilt on the drug counts and the felon-in-possession count was overwhelming.  The two police officers twice actually observed Martin in the act of selling crack cocaine to the confidential informant, and they testified to those observations.  When searching his residence, the police discovered a handgun, ammunition for two guns and a loaded clip for a third gun, and over five grams of crack cocaine.  When the police arrested Martin, they seized over three grams of crack cocaine.  The jury did not need any expert testimony to help them understand this evidence.  And despite the expert testimony regarding the use of a handgun during drug trafficking, the jury acquitted Martin of the handgun-

used-in-trafficking charge. We cannot conclude from the evidence produced and the jury's findings, that the duality of the officer's testimony had an undue effect on the outcome in this case.

Nor can we conclude in this particular case that this dual testimony seriously affected the fairness, integrity, or public reputation of the proceedings. Quite to the contrary, as the Supreme Court exclaimed in *Johnson*, 520 U.S. at 470: "Reversal for error, regardless of its effect on the judgment, encourages litigants to abuse the judicial process and bestirs the public to ridicule it." *See also United States v. Cotton*, 535 U.S. 625, 634 (2002) ("The real threat then to the 'fairness, integrity, and public reputation of judicial proceedings' would be if respondents, despite the overwhelming and uncontroverted evidence that they were involved in a vast drug conspiracy, were to receive a sentence prescribed for those committing less substantial drug offenses because of an error that was never objected to at trial.").

Martin's argument lacks merit. The district court did not commit plain error by allowing the police officer to testify as both expert and fact witness without a cautionary instruction.

### B.

Martin argues that the evidence was insufficient to support a conviction. "In determining the sufficiency of the evidence to support a guilty verdict 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Pearce*, 912 F.2d 159, 161 (6th Cir. 1990) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

On the distribution charge, the government produced two police officers who testified to witnessing the drug transactions and identified Martin in court. Martin argues that this is insufficient, inasmuch as the government did not produce any marked currency, photo or video evidence of the crime, audio recordings of the crime, or confidential informant testimony. But clearly, a reasonable juror could have believed the officers, so we cannot overturn the jury's verdict.

On the gun possession charge, the government produced evidence that the gun was found beside the bed in the master bedroom of Ms. Tyson's apartment, and that a quantity of men's clothing was found in the closet in that bedroom; further, the government produced evidence — including a telephone bill to Martin at that address as well as a prescription drug container bearing Martin's name, which was in the medicine cupboard in the apartment — that Martin was residing there. Martin argues that Susan Tyson testified to owning the gun and decries the lack of fingerprint evidence to demonstrate his ownership. But again, a reasonable juror could have drawn the inference that Martin possessed the gun, and therefore we cannot overturn the jury's verdict.

Martin's challenge to the sufficiency of the evidence is without merit.

### C.

Martin makes several allegations regarding the prosecutor's closing argument, some of which were the subject of objections at trial, and others of which are not. The objections which he raised at trial we review under the traditional prosecutorial misconduct standard. The others we review for plain error.

First, Martin argues that the government's closing argument, which he claims referred to evidence not admitted and misstated that evidence, was inflammatory and designed to arouse the jury's emotion and prejudice. The evidence in question is a self-incriminating rap song, written by Martin, which the police found in a notebook recovered from his residence. Despite Martin's claim to the contrary, this *was* entered into evidence, and — as Martin explains — the prosecutor read this song to the jury at the beginning of the rebuttal argument. In short, it was relevant to rebut defense

counsel's argument that the guns were not Martin's and were not used in drug dealing (an argument the jury appears to have believed, inasmuch as it acquitted Martin on the gun-used-in-trafficking charge). This was not a misrepresentation of any evidence nor was it inherently inflammatory.

Next, Martin claims that the prosecutor denigrated defense counsel by stating that the police do not need to produce every type of evidence that the defense lawyer can "think up," referring specifically to fingerprints on the gun. Again, this was a rebuttal argument — specifically, rebuttal to defense counsel's argument that (despite the eye witnesses) the prosecutor had not satisfied the government's burden of proof beyond a reasonable doubt because it had not produced numerous other types of evidence, such as videos, audiotapes, fingerprints, etc. There is no basis to conclude from this exchange that the prosecutor denigrated defense counsel.

Finally, Martin contends that the prosecutor violated his right to a fair trial by calling him a drug dealer and urging the jury to convict him. Martin cites *United States v. Solivan*, 937 F.2d 1146 (6th Cir. 1991), for the proposition that it is clear error for the prosecutor to "suggest[] that the jurors' community drug problem would continue if they did not convict the defendant." But in *Solivan*, the defense counsel objected, and more importantly, the prosecutor said: "And I'm asking you to tell her and all of the other drug dealers like her [] — [t]hat we don't want that stuff in Northern Kentucky and that anybody who brings that stuff in Northern Kentucky . . . ." *Id.* at 1148. The *Solivan* prosecutor was urging the jury to punish the defendant for the conduct of other drug dealers generally. That is simply not the case here. The prosecutor here urged the jury to punish Martin for the conduct of Martin — no one else, just Martin.

Martin's claim of prosecutorial misconduct is without merit.

### D.

Martin contends — as best as we can tell from the vague discussion in his brief — that the court erred by finding him to be a career offender and thereby calculating a higher advisory sentence range than it would have calculated if it had not found him to be a career offender. But, Martin's counsel conceded at sentencing that Martin is a career offender, and rather than protesting that finding, argued instead for a departure below the guidelines range.

This argument has no merit. The district court committed no error and we have no basis to conclude that the district court sentenced Martin unreasonably or abused its discretion in doing so.

### III.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.