RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 09a0354p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
　　　　　　　　　　*Plaintiff-Appellee,*

　　　*v.*

RICCO LAMONTE MAYE,
　　　　　　　　　　*Defendant-Appellant.*

No. 07-4311

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 06-00263—Michael H. Watson, District Judge.

Argued:  March 11, 2009

Decided and Filed:  October 5, 2009

Before:  BATCHELDER, Chief Judge; DAUGHTREY and MOORE, Circuit Judges.

_____

**COUNSEL**

**ARGUED:**  Michael M. Losavio, Louisville, Kentucky, for Appellant.  Salvador A. Dominguez, ASSISTANT UNITED STATES ATTORNEY, Columbus, Ohio, for Appellee.
**ON BRIEF:**  Michael M. Losavio, Louisville, Kentucky, for Appellant.  Salvador A. Dominguez, ASSISTANT UNITED STATES ATTORNEY, Columbus, Ohio, for Appellee.

　　　DAUGHTREY, J., delivered the opinion of the court, in which MOORE, J., joined. BATCHELDER, C. J. (pp. 20-29), delivered a separate opinion concurring in part and dissenting in part.

_____

**OPINION**

_____

　　　MARTHA CRAIG DAUGHTREY, Circuit Judge.  The defendant, Ricco Lamonte Maye, pleaded guilty to charges of distributing more than five grams of crack cocaine and possessing a firearm in furtherance of a drug-trafficking crime.  The district court sentenced Maye to consecutive prison terms of 78 months and 60 months, respectively.  The defendant

1

now contends that: (1) the district judge improperly denied him a three-level reduction in his guideline sentencing range for acceptance of responsibility; (2) the prosecution failed to establish a factual basis for the firearm offense; (3) the drug sentence unreasonably failed to take into account the unwarranted disparity between sentencing ranges for crack cocaine and powder cocaine; and (4) the district court should have retroactively applied sentencing guideline amendments to Maye's case so as to reduce the defendant's criminal history category. For the reasons discussed below, we find merit in Maye's second and third allegations of error, vacate his conviction under 18 U.S.C. § 924(c), and remand this matter to the district court for a new plea acceptance hearing and a new sentencing hearing.

### FACTUAL AND PROCEDURAL BACKGROUND

Maye's convictions stemmed from his sale of crack cocaine on March 2, 2006, to a confidential informant who was cooperating with Columbus law enforcement officials' investigation of the Short North Posse gang. On that date, the informant arranged to purchase 5.68 grams of crack cocaine from the defendant, at a cost of $180, and went to the defendant's apartment to buy the cocaine. There, he and others were told to leave the apartment when the defendant received a call that a law enforcement officer had been spotted in the neighborhood. As a result, the transaction actually occurred on the porch of a nearby apartment. The cooperating informant later testified, however, that he had seen a "chrome-plated revolver" inside the defendant's apartment before leaving.

Based on information gathered as a result of the drug transaction, officers obtained and executed a search warrant for defendant Maye's apartment, seizing an additional 2.1 grams of crack cocaine, as well as "baggies, digital scales, cellular telephones, a money counter," a loaded .38 caliber revolver, and $1,360 in cash. The money included the $180 in marked currency that had been used to purchase the 5.68 grams of crack.

Two months later, on May 19, 2006, the defendant agreed to another sale of crack cocaine to the same confidential informant, unaware that the buyer was cooperating with state and federal agents. The informant later testified during the sentencing proceedings that when he arrived at the location designated for the sale, Maye was "in the process of converting the powder cocaine into crack cocaine." After this process was completed, the

defendant sold the informant another 18.03 grams of crack.  This transaction was recorded by a device hidden on the informant's person.

Following his arrest, Ricco Maye was charged with the distribution of more than five grams of cocaine base on March 2, 2006 (Count 1), the possession of a firearm in furtherance of a drug-trafficking crime (Count 2), and the distribution of more than five grams of cocaine base on May 19, 2006 (Count 3).  In addition, a fourth count of the indictment called for the forfeiture to the government of all proceeds from the March 2 drug sale, including the $1,360 in cash seized by law enforcement officials.  The defendant, his counsel, and the United States Attorney negotiated a plea agreement under which Maye would plead guilty to Counts 1 and 2 of the indictment and agree to the forfeiture of $1,360 in exchange for the dismissal of Count 3 and the government's on-the-record recognition "that as of the time of the filing of this Plea Agreement, the Defendant has accepted responsibility for the offenses set forth in Counts 1 and 2 of the Indictment, as that term i[s] defined in § 3E1.1(b) of the Federal Sentencing Guidelines."

Defendant Maye did in fact plead guilty as envisioned by the agreement, admitting "that, for the purposes of sentencing, the relevant conduct for the controlled substances at issue to be considered by the Court pursuant to U.S.S.G. § 1B1.3 and § 2D1.1(c)(6) is between 20 and 35 grams of cocaine base."  Based upon the sentencing guidelines in effect at the time, the district court pegged Maye's base offense level at 28 and his criminal history as falling into category III, subjecting him to a sentencing range of 97-121 months  on the conviction under Count 1.  *See* U.S.S.G. § 2D1.1(c)(6) (2006).  The court specifically refused to grant a three-level reduction for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, because Maye "falsely denie[d] and/or frivolously contest[ed] relevant conduct" concerning the "cooking" of crack on May 19, 2006.  Prior to imposing sentence, however, the district judge did consider the defendant's childhood history of abuse and abandonment, the fact that Maye had finished high school, and the presence in court of numerous friends and family members willing to offer their support.  On the other hand, the district court also noted that the defendant was a gang member, that he continued to possess guns, and that he had failed to remain current on court-ordered child support payments.  The court then sentenced Maye to the low end of the applicable guideline range – 97 months – for the distribution of crack cocaine and added a mandatory, consecutive 60-month sentence for the

possession of a firearm in furtherance of a drug-trafficking offense, yielding an effective prison sentence of 157 months.

A few weeks after the initial sentencing, the court resentenced Maye to take into account pending amendments to the sentencing guidelines that were to go into effect on November 1, 2007, three weeks *after* that re-sentencing date. Pursuant to the 2007 version of the guidelines, the offense level commensurate with distribution of 20-35 grams of crack cocaine would be dropped from level 28 to level 26, resulting in a reduction of the applicable sentencing range to 78-97 months. *See* U.S.S.G. § 2D1.1(c)(7) (2007). Consequently, in keeping with his prior decision to sentence the defendant at the low end of the applicable range, the district judge resentenced Maye to 78 months in prison for the distribution offense, along with the consecutive 60-month sentence for the possession of a firearm in furtherance of a drug-trafficking crime. From that later sentencing determination, the defendant now appeals, raising numerous allegations of legal and factual error.

## *DISCUSSION*

### Denial of Three-Point Reduction for Acceptance of Responsibility

Defendant Maye was ultimately sentenced to 78 months in prison for the March 2 distribution of crack cocaine offense described in Count 1 of the indictment. On appeal, the defendant contends that the district court erred in calculating the appropriate offense level, in part because the district judge erroneously considered Maye's denial of certain facts relating to the subsequent May 19 sale in concluding that the defendant failed to accept responsibility for his offenses.

Under different circumstances, the defendant might well have a convincing argument that the district court should not have used Maye's denial of crack "cooking" to justify the refusal to reduce the defendant's sentencing range by three levels. Pursuant to application note 1(a) of the commentary to section 3E1.1 of the sentencing guidelines, Maye's entitlement to at least a two-level reduction in sentencing level was dependent upon his "truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct)." U.S.S.G. § 3E1.1, comment. (n.1(a))

(2006). Under the same provision, "a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." *Id.*

Maye argues that the crack "cooking" was relevant only to the drug sale of May 19, not to the March 2 sale that constituted the actual "offense of conviction." He also notes that the discussion of "relevant conduct" in section 1B1.2(a)(1)(A) refers only to acts "that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." Because the May 19 preparation and sale of crack cocaine did not factor into the March 2 "offense of conviction," Maye insists, even a false denial or frivolous contest of that activity was irrelevant for purposes of sentencing in this case.

Additionally, the defendant submits that he truthfully admitted the conduct that comprised the basis for the actual charge lodged against him for his May 19 activities – the *distribution* of more than five grams of crack cocaine. Thus, according to that line of argument, any denial of his role in the "cooking" of the crack on May 19 was not only irrelevant to the March 2 offense, but also had absolutely no bearing on any sentence that could have been imposed upon conviction for even the latter drug-trafficking offense charged in Count 3 of the indictment.

Unfortunately for Maye, however, his resort to an intellectual parsing of the language of the applicable sentencing provisions is unavailing in this case. In paragraph 12(a) of the plea agreement between Maye and the government, the parties accepted as true "that, for purposes of sentencing, the relevant conduct for the controlled substances at issue to be considered by the Court pursuant to U.S.S.G. § 1B1.3 and § 2D1.1(c)(6) is between 20 and 35 grams of cocaine base." In order to reach that 20-35-gram amount, moreover, it is necessary to consider both the offense conduct from the March 2 distribution and that from the May 19 sale of 18.03 grams of crack, including the relevant preparatory activities associated with the latter transaction. Because the defendant voluntarily agreed to the court's consideration of evidence from the May 19 sale as "relevant conduct," he cannot now successfully challenge the district judge's determination that contesting the facts germane

to that transaction precluded a finding that Maye actually accepted responsibility for those actions.

**Understanding of and Factual Basis for Firearms Offense**

Defendant Maye also pleaded guilty to the offense of possession of a firearm "in furtherance of" a drug-trafficking crime. *See* 18 U.S.C. § 924(c). Pursuant to the provision of section 924(c) under which the defendant was convicted, the government must prove more than the simple fact that a firearm was possessed "during and in relation to" a drug-trafficking offense. *See United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001). In ruling that mere possession of a firearm on the same premises as a drug transaction is insufficient to support a section 924(c) conviction, we have previously held that "the firearm must be strategically located so that it is quickly and easily available for use." *Id.*; *see also United States v. Couch*, 367 F.3d 557, 561 (6th Cir. 2004).

On appeal, Maye argues that the government failed to provide the necessary factual basis for the defendant's guilty plea to this weapons-possession charge. *See* Fed. R. Crim. Proc. 11(b)(3) ("Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea."). Underlying this challenge, moreover, is Maye's assertion that he never truly understood the nature of the charge to which he pleaded guilty and that the district court thus also failed to abide by the strict dictates of Rule 11(b)(1)(G) of the Federal Rules of Criminal Procedure.[1]

Maye failed to raise these arguments before the district court, however. As a result, we now review the allegations for plain error only. *See United States v. Lalonde*, 509 F.3d 750, 759 (6th Cir. 2007). To establish "plain error," the defendant must show that there is "(1) error, (2) that is plain, and (3) that affect[s] substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 467 (1997) (citations and internal quotation marks omitted).

---

[1]Rule 11(b)(1)(G) provides that before accepting a guilty plea from a defendant, the district court must determine that the defendant understands "the nature of each charge to which the defendant is pleading."

There can be no dispute that a defendant must understand the various elements of any offense to which he or she pleads guilty before that plea can be considered constitutionally valid. *See Bousley v. United States*, 523 U.S. 614, 618-19 (1998). In many cases, such an understanding may be garnered merely from a reading of the indictment and from an opportunity for the defendant to ask questions about the charge. *See United States v. Valdez*, 362 F.3d 903, 908 (6th Cir. 2004). In more complicated instances, "further explanation may be required." *Id.*

In this case, the transcript of the defendant's plea submission hearing reflects that the district judge attempted to ensure Maye's understanding of each of the elements of the section 924(c) charge. In pertinent part, the judge engaged in the following colloquy with the defendant:

> THE COURT: Did you possess a chrome-plated revolver which you displayed in close proximity to the drug transaction?
>
> THE DEFENDANT: Can you repeat that part, please?
>
> THE COURT: During the transaction, Maye possessed a chrome-plated revolver, which was displayed in close proximity to the drug transaction. Is that accurate?
>
> THE DEFENDANT: Yes, sir.

Those answers, in conjunction with other information elicited during the hearing, led the district court to accept Maye's guilty plea after finding "that the defendant is fully competent and capable of entering an informed plea, that his plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offenses to which he's offering to plead guilty."

By the time of the defendant's sentencing, however, it was obvious that Maye, Maye's attorney, and even the district judge were confused as to what exactly was required to establish guilt of a section 924(c) possession-in-furtherance charge. Indeed, the following discussion points out that the various principals in the plea proceedings did not believe that "a specific nexus between the gun and crime charged" need be shown but, rather, that the government need show only that the defendant possessed a firearm and that the firearm was located somewhere near the illegal drug transaction:

THE COURT:  Mr. Maye, do you have something to say in mitigation, sir?

THE DEFENDANT:  Yes.

THE COURT:  Have at it.

THE DEFENDANT:  Like, I was kind of confused on one of the charges.

THE COURT:  What's that?

THE DEFENDANT:  I was kind of confused on one of the charges I was charged with, which is a 924(c).

THE COURT:  What were you confused about?

THE DEFENDANT:  Like exactly how I got charged with the 924(c).

THE COURT:  What's that?

THE DEFENDANT:  Exactly how I got charged with the 924(c).

THE COURT:  Don't you think the time to visit that would have been the day we took your plea when I asked you if all the statement of facts that you were pleading guilty to were accurate?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  Are you now wanting to back away from your plea agreement?

THE DEFENDANT:  As far as that case, somewhat, yes.

THE COURT:  Really.

THE DEFENDANT:  Because at the time at pretrial when I had changed my plea from not guilty to guilty, it was like a less than [a] 10 minute thing, and then we –

THE COURT:  Ricco, that is just –

THE DEFENDANT:  I mean, I'm not denying the fact that I had the gun, but as far as what I learned from being in jail, like the 924(c) is committing a crime by having a gun.

THE COURT:  Do you recognize that everything you say will be held against you at this point?

THE DEFENDANT:  Yes.

THE COURT:  And you do recognize that you just admitted again what you previously admitted?

THE DEFENDANT:  Yes.

THE COURT:  The 924(c) charge charged you with possession of a firearm in furtherance of a drug trafficking crime.  You had it in your possession for use in a drug trafficking crime.  You're not being charged with brandishing it or otherwise using it.  *You had it, and that was sufficient*.  Specifically, the elements that you previously heard were that you, Ricco Maye, possessed a firearm in furtherance of a drug trafficking crime.  And I would assume that it was based upon that fact that you were charged with it, that you did so knowingly and intentionally, and that you did this on or about the date that was alleged in the indictment in the Southern District of Ohio.

Those are the elements that the government would have to prove if you had gone to trial on that count.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  All right.  And just so we can reiterate for the record, and perhaps you'll want to talk with Mr. Settina [defense counsel] about this, but at the time that I accepted your plea, you indicated that you understood these elements; in fact, you had the opportunity to read along with them and consult with Mr. Settina at the time, and whether you agreed with those elements and whether you knowingly and voluntarily were giving up your right to have the government prove these elements beyond a reasonable doubt.  All of those things you have done prior to today's date.  That's what the government would have to prove at trial.

THE DEFENDANT:  Okay.  Well, *I think I was just under the impression that I was being charged for having a gun period, point blank*.

THE COURT:  I'm sorry.  Come again with that.

THE DEFENDANT:  I said *I was under the impression that I was just being charged with having the gun in my apartment*.  From what I learned in jail or  – I mean –

THE COURT:  Which is the best place to get legal advice, is the jail, right?

Okay.  So why don't you – why don't you learn from your lawyer who is standing right next to you, the one that's passed the bar, unlike your friends in the county jail.

All right.  Why don't you gentlemen have a seat and chat about this for a moment.  Okay?

* * * * *

MR. SETTINA:  Your Honor, I have explained to Mr. Maye to the best I can the elements of the offense and why he's guilty of them or why I believe he's guilty of them, and I don't know that I can do any more – or that anybody can do any more, and *I'm still at this time not certain that Mr. Maye understands why the situation – given the facts of the situation as were explained and applying the law to those facts why that makes him guilty of the offense*.  He has requested that the Court explain it to him, and that's where we are.

THE COURT:  The incident – the Court's going to reread the statement of facts that was read at the time that the Court accepted your guilty plea. And at the time that I accepted your guilty plea, I asked you if the statement of facts was true, and you said they were.

So paragraph 1, on or about March 2, 2006, up to and including November 28, 2006, Ricco Maye did possess with intent to distribute, manufacture and distribute approximately 25.81 grams of cocaine base, commonly referred to as crack, a Schedule II controlled substance and did possess a firearm in furtherance of a crime of drug trafficking.

These activities took place at various locations in and around the Short North area of Columbus, Ohio.

Do you want me to read the second paragraph?

MR. SETTINA:  Do you need him to read that, or are you clear?

THE DEFENDANT:  Yeah, I'm clear.

MR. SETTINA:  He indicates that he's clear, Your Honor.

THE COURT:  Mr. Maye, are you guilty as charged and as you have previously indicated with respect to Count 1, which is the possession with intent to distribute, manufacture and distribute approximately 25.81 grams of cocaine base, and with respect to Count 2, the possession of a firearm in furtherance of a drug trafficking crime, a violation of 18 United States Code, Section 924(c)(1)(A)(a)?

MR. SETTINA:  He'd like to ask counsel a question, Your Honor.

THE COURT:  Yes.

MR. SETTINA:  I think Mr. Maye is clear now.

THE COURT:  And so he could answer my question?

THE DEFENDANT:  Yes.

THE COURT:  You are guilty of Counts 1 and 2 as charged, correct?

THE DEFENDANT:  That's correct.

THE COURT:  And you understand why you're guilty?

THE DEFENDANT:  Yes, I understand now.

THE COURT:  Why don't you tell me one more time.  Why are you guilty?

THE DEFENDANT:  Because on Count 1 where I did make the sale to the CI; and on Count 2, *I was guilty because I had – I just had the gun period, point blank.*  I was just under the impression that –

THE COURT:  You had the gun with you, and you were selling crack cocaine?

THE DEFENDANT:  Are you saying with me, like, on me?

THE COURT:  No.  In your possession, in your constructive possession, in your apartment.

THE DEFENDANT:  Oh, yes, it was in my apartment.

THE COURT:  Okay.  And it was your gun?

THE DEFENDANT:  Yes.

THE COURT:  And it was in your apartment?

THE DEFENDANT:  Yes.

THE COURT:  And it was – nobody else lived there?

THE DEFENDANT:  No.

THE COURT:  Okay.  Very good.

THE DEFENDANT:  Oh.

THE COURT:  Go ahead.

THE DEFENDANT:  All right.  But the thing – the main thing I was confused about is that the sale took place on the front porch and not in my apartment, so I was thinking that the 924 means that the crime would have to happen at the same place that the gun was at.

THE COURT:  When we get done with all this, I'm going to tell you about your appellate rights, all right?

THE DEFENDANT:  Okay.

THE COURT:  If you want to litigate that, have at it.

THE DEFENDANT:  Oh.

THE COURT:  All right?

THE DEFENDANT:  Yes.

(Emphases added.)

We set out this extended excerpt from the sentencing hearing transcript to demonstrate the consistency with which the district court expressed a mistaken understanding that a section 924(c) conviction for possession of a firearm in furtherance of a drug-trafficking offense could be established simply by evidence that a gun was present on the premises where a drug sale occurred.[2]  Clearly, however, such a coincidental presence of a firearm in the vicinity of a crime is insufficient to support a section 924(c) conviction.  *See United States v. Combs*, 369 F.3d 925, 933 (6th Cir. 2004).  Instead, "the government must show that the 'firearm was possessed to advance or promote the commission of the underlying [drug- trafficking] offense.'" *Id.* (quoting *Mackey*, 265 F.3d at 461-62).

In this case, the court failed to make Maye aware of the nuances of the section 924(c) statute prior to entry of his guilty plea, and the prosecution never identified evidence that would meet that more stringent "in furtherance" standard.  Furthermore, the statements of the defendant during the hearing establish beyond any doubt that Maye would not have entered the guilty plea to the firearms charge if he had thought that something more than mere possession of a weapon on the premises was necessary to establish his guilt.  Ironically, Maye's jailhouse acquaintances were the individuals who alerted him to the proper preconditions for a section 924(c) conviction, while the district court and the defendant's own attorney were the parties unintentionally leading Maye astray.

Under such circumstances, we are constrained to conclude that the district judge erred in carrying out his Rule 11 duties, that the error was plain, that it clearly affected

---

[2]The dissent admits, as it must, that the district judge stated plainly to Maye that "[y]ou had it, and that was sufficient."  Rather than taking those unambiguous words at their face value, however, the dissent attempts to salvage the section 924(c) conviction by imputing some hidden explanatory meaning to them.  Such judicial creationism is beyond our appellate-review charge.

substantial rights possessed by Maye, and that such an error that allows a loss of liberty based upon a quantum of evidence that fails to meet statutory requirements seriously affects the fairness, integrity, and reputation of the judicial proceedings. We thus hold that Maye is entitled to another opportunity to plead to the section 924(c) charge -- this time fully cognizant of the nature of the charge to which he is pleading.

In *Valdez*, we noted that "Rule 11(b)(1)(G)'s requirement that a defendant understand the essential elements of the crime is integrally related to Rule 11(b)(3)'s requirement that the district court determine that the plea has a factual basis." 362 F.3d at 909. Consequently, for the same reasons discussed in relation to Maye's challenge to the district court's failure to apprise him of the nature of the section 924(c) charge made against him, we hold that the government has also failed to advance a sufficient factual basis for the defendant's guilty plea. Without any evidence that the firearm found in Maye's residence was "possessed to advance or promote the commission of the underlying [drug-trafficking] offense,"[3] the district court thus committed plain error in entering judgment on the defendant's section 924(c) guilty plea for this alternate reason as well.

---

[3]The evidence highlighted by the prosecution and accepted by the district court, if anything, leads to the conclusion that the firearm was *not* possessed to advance or promote the drug trafficking offense. Not only was the gun not brandished during the crime, the confidential informant gave no indication that the gun was even loaded at that time or that Ricco Maye threatened him with the weapon. No testimony indicated that the defendant pointed out the gun to the informant or that the gun was easily visible to the visitor. Indeed, the confidential informant even went so far as to confirm that the defendant took him *away from* the gun and out onto a porch of an apartment "across the way" to consummate the drug transaction. In short, the evidence presented as a factual basis for the plea establishes nothing more than "that the firearm's presence in the vicinity of the crime was . . . mere chance or coincidence," a showing that we have clearly indicated is insufficient to meet the requirements of Rule 11(b)(3). *See Combs*, 369 F.3d at 933.

In an effort to contradict this conclusion, the dissent states that "[t]he facts were sufficient to show that the revolver . . . was another tool of Maye's trade." Merely stating such a conclusion, however, does not necessarily make the statement true. The burden of proof in a criminal case rests upon the prosecution and it is the prosecution that is responsible for establishing in this case that the gun "was possessed to advAnce or promote the commission of the underlying [drug-trafficking] offense." *Combs*, 369 F.3d at 933. Although we might surmise that the presence of the gun in the defendant's home was indeed connected with Maye's drug trade, the government failed to establish that link beyond a reasonable doubt and the defendant's statements in open court only reinforce the conclusion that misunderstandings and confusion tainted the taking of the plea in this matter. Rather than sacrifice treasured constitutional protections, we should take the relatively painless step of ensuring Maye's understanding of the charges levied against him by providing him with a new plea hearing.

**Reasonableness of Sentence in Light of Powder/Crack Disparity**

On September 17, 2007, the district court sentenced Maye to 97 months in prison for distributing more than five grams of crack cocaine. Three weeks later, in anticipation of the November 1 effective date for changes to the manner in which crack cocaine sentences would be calculated, the court resentenced the defendant using the two-level reductions built into the amended section 2D1.1(c) of the sentencing guidelines. Use of the new guidelines led to the imposition of a 78-month sentence for the March 2 crack distribution. On appeal, Maye now contends that the drug sentence should be reduced even further in light of recent pronouncements by the United States Supreme Court and by this court that undercut the presumed starting point for sentence calculations that is contained in the guidelines.

In *Kimbrough v. United States*, 552 U.S. 85, ____, 128 S.Ct. 558, 575 (2007),[4] the Supreme Court reemphasized that even the crack cocaine guidelines were advisory only, *see United States v. Booker*, 543 U.S. 220 (2005), and held that "it would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purpose, even in a mine-run case." A little more than a year later, in *Spears v. United States*,129 S.Ct. 840, 843-44 (2009), the Court then took the next logical step along the *Booker-Kimbrough* continuum and held "that district courts are entitled to reject and vary categorically from the crack-cocaine Guidelines based on a policy disagreement with those Guidelines."

The Sixth Circuit has already been presented with an opportunity to apply *Spears* in distinguishable scenarios. In *United States v. Johnson*, 553 F.3d 990 (6th Cir. 2009), our opinion gave no clue that defendant Johnson raised a *Kimbrough*/*Spears* challenge to his crack cocaine sentence at the appropriate time, either in the district court or on appeal. In fact, the opinion in *Johnson* stated simply:

---

[4]*Kimbrough* was decided on December 10, 2007, approximately two months after the district court in this case altered Maye's sentence so as to comply with the pending guideline amendments.

> At the conclusion of the sentencing hearing, Johnson's counsel objected to: (1) the district court's determination that Johnson was not entitled to a downward adjustment based on a mitigating role pursuant to U.S.S.G. § 3B1.2, and (2) the district court's decision to impose the federal sentence consecutive to the state sentence pursuant to U.S.S.G. § 5G1.3.

*Id.* at 994-95. However, even though the district court sentenced the defendant pursuant to the November 1, 2007, amendments to the guidelines that provided for a downward adjustment of crack cocaine sentencing ranges, "[b]ecause the district court did not appear aware of its authority to vary from the crack-cocaine Guidelines, we remanded 'to give the district court an opportunity to impose a sentence with full recognition of its authority to reject and vary from the crack-cocaine Guidelines based solely on a policy disagreement with those Guidelines.'" *United States v. Guest*, 564 F.3d 777, 780 (6th Cir. 2009) (quoting *Johnson*, 553 F.3d at 992).

More recently, in *Guest*, we distinguished *Johnson* and declined a remand for re-sentencing. The defendant in *Guest* was convicted of crossing state lines with the intent to engage in sexually illicit conduct with two underage children. The two children, it turned out, were fictitious, having been created by an undercover FBI agent who posed in an internet chat group as a divorced mother with two young daughters. Guest received upward adjustments under the guidelines for each fictitious child, resulting in an offense level of 34 and a guidelines range of 151 months to 188 months. *See id.* at 778. Had there been only one child, Guest's offense level would have been 32 and his guidelines range would have been 121 months to 151 months. *See id.* at 778 n.3. At sentencing, Guest argued that he should not have received upward adjustments for each child because the FBI could have created just one fictitious child. The district court responded that it had "looked at the guidelines and what they would be if they were two points less, although *whatever I do in the way of sentencing is not based upon that at all. I just want the record to reflect that I have considered that.*" *Id.* at 778 (emphasis added). Consistent with this recognition that it was not constrained by the guidelines calculation, the district court sentenced Guest to a below-guidelines sentence of 120 months. *See id.* at 779.

On appeal, we rejected Guest's claim that the district court might have imposed a lower sentence if it had known of its authority to deviate from the guidelines on policy grounds under *Kimbrough*. In so doing, we emphasized the district court's affirmative indication that it understood its authority to deviate from the relevant guidelines calculation. Thus, even though the district court in *Guest* did not have the benefit of the Supreme Court's subsequent decisions in *Kimbrough* and *Spears*, it clearly had full recognition of its power to "vary from Guidelines ranges based solely on policy considerations, including disagreements with the Guidelines." *Kimbrough*, 552 U. S. at ___, 128 S. Ct. at 578.

We find Maye's case to be more akin to *Johnson* than it is to the situation presented in *Guest*. Although it is true that the district judge in this matter never explicitly stated that he felt bound by the crack-cocaine policies exemplified in the guidelines, the transcript of the sentencing hearing suggests that he may have acted in adherence to those principles. Initially, the court sentenced Maye at the bottom of the applicable guideline range. When the guidelines were amended to reflect a recognition that the crack-powder disparity was too drastic, the district judge did not engage in his own examination of the appropriate punishment for the defendant but, rather, simply reduced the relevant offense level the requisite two levels and again imposed the lowest sentence within the range without further explanation. Hence, there is reason to believe that the judge did not recognize his authority to "reject and vary from the crack-cocaine Guidelines based solely on a policy disagreement with those Guidelines." *Johnson*, 553 F.3d at 992. Because this case must be remanded for correction of the section 924(c) error under Count 2, we elect, as we did in *Johnson*, to vacate Maye's sentence under Count 1 and remand the matter with directions to the district court to examine the sentencing criteria anew, independent of the guidelines' gloss, and determine whether it wishes to reject the guidelines' rationale on policy grounds.

**Retroactivity of Amendments Regarding Computation of Criminal History**

In a final appellate issue,[5] Maye submits that he should have been designated a criminal history category II offender, rather than a criminal history category III offender. In that event, he claims, the applicable sentencing range for this drug offense conviction would have been 70-87 months instead of 78-97 months. In support of this argument, Maye directs our attention to an amendment to section 4A1.2(c) of the guidelines that became effective November 1, 2007. Even applying that 2007 amendment, however, the district court would necessarily have arrived at the same criminal-history-category-III designation for the defendant.

Pursuant to the version of U.S.S.G. § 4A1.2(c) in effect at the time of Maye's sentencing, sentences for misdemeanors and petty offenses were counted toward a defendant's criminal history only if:

> (A) the sentence was a term of probation of *at least one year* or a term of imprisonment of at least thirty days, or

> (B) the prior offense was similar to [one of the offenses listed in § 4A1.2(c)(1)].

U.S.S.G. § 4A1.2(c) (2006) (emphasis added).[6]

Under that sentencing calculus, the probation office determined that Maye accumulated five criminal history points for prior misdemeanor convictions for negligent assault, no operator's license, domestic violence/simple assault, resisting arrest, and attempted carrying of a concealed weapon. Because, however, section 4A1.1(c) limits to four the number of criminal history points that can be accumulated for prior sentences

---

[5] Maye also raises for the first time on appeal a claim that his conviction under 18 U.S.C. § 924(c) is invalid because the Supreme Court has now recognized a constitutional right of eligible individuals to possess handguns in the home for self-defense and defense of property. *See District of Columbia v. Heller*, 128 S.Ct. 2783 (2008). We choose, however, not to decide this issue at this time because it was raised so late in the process and was not fully briefed by either party. Of course, on remand, Maye is entitled to raise this argument anew.

[6] Effective November 1, 2007, § 4A1.2(c)(1)(A) was amended to require that the term of probation be "more than one year" rather than "at least one year." Thus, a probation term of exactly one year would lead to consideration of the offense of conviction in the criminal history computation prior to November 1, 2007, but not after that date.

of less than 60 days, the presentence report assigned only four such points to Maye, supplemented by an additional two points for commission of an offense "while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." U.S.S.G. § 4A1.1(d) (2006). The defendant's six criminal history points thus placed him in criminal history category III, which is reserved for offenders with four, five, or six criminal history points.

On appeal, Maye contests the assignment of one point each for his convictions for domestic violence/simple assault and for resisting arrest.[7] However, we need not involve ourselves in a discussion of the defendant's argument because, even if the two challenged criminal history points were discounted, Maye would still have accumulated three points for misdemeanor convictions plus the two additional points for having committed the present offenses while under "probation, parole, supervised release, imprisonment, work release, or escape status." Thus, even under the best-case-scenario proposed by the defendant, five criminal history points would still be assigned to Maye, again subjecting him to sentencing as a criminal history category III offender. This challenge to the defendant's sentence is thus without merit.

## *CONCLUSION*

After defendant Ricco Maye pleaded guilty to charges of distributing more than five grams of crack cocaine and possessing a firearm in furtherance of a drug-trafficking offense, the district court sentenced the defendant to consecutive prison terms of 78 months and 60 months, respectively. That court, however, committed plain error in accepting Maye's guilty plea to the section 924(c) charge when no factual basis for that allegation was offered and when the defendant was not properly instructed as to the nature of the charge to which he was pleading. We, therefore, VACATE the defendant's conviction under 18 U.S.C. § 924(c) for possession of a firearm (Count 2) and REMAND this matter to the district court for a new plea hearing. For the reasons set out

---

[7]The government concedes that retroactive application of the 2007 amendments to the sentencing guidelines would not allow Maye to be assigned one criminal history point for a January 2004 resisting arrest conviction because the period of probation was exactly one year.

above, we also VACATE the defendant's sentence for distribution of crack cocaine (Count 1) and REMAND the matter for re-sentencing.

---

## CONCURRING IN PART AND DISSENTING IN PART

---

ALICE M. BATCHELDER, Chief Judge, concurring in part and dissenting in part. I find no infirmity in Ricco Maye's convictions or sentence. I agree with the majority that the district court did not err in denying Maye a three-level reduction in his offense level for acceptance of responsibility. I also agree that the district court correctly determined Maye's criminal history category. Unlike the majority, however, I would hold that Maye's guilty plea to the 18 U.S.C. § 924(c) charge was knowing and voluntary, and had a sufficient factual basis. Also, there is no indication of error in the record that would justify a remand for resentencing on the distribution count.

### *Maye's Plea to the § 924(c) Charge Was Knowing and Voluntary*

Maye pled guilty under the terms of a Rule 11 plea agreement. At Maye's plea hearing on March 23, 2007, the district court explained the elements the government would have to prove beyond a reasonable doubt if Maye exercised his right to go to trial. As to the 18 U.S.C. § 924(c) count, the court recited that the government would have to prove that: (1) Maye possessed a firearm in furtherance of a drug trafficking crime; (2) that he did so knowingly and intentionally; and (3) that jurisdiction was proper.[1] The Assistant United States Attorney then read a statement of facts into the record. Afterward, the court went through the statement, paragraph by paragraph, to see if Maye disputed any of the facts. This colloquy included the following exchange:

> THE COURT: During the transaction, Maye possessed a chrome-plated revolver, which was displayed in close proximity to the drug transaction. Is that accurate?
>
> THE DEFENDANT: Yes, sir.

---

[1] 18 U.S.C. § 924(c) provides, in relevant part: "[A]ny person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime — (i) be sentenced to a term of imprisonment of not less than 5 years[.]"

THE COURT: Was a search warrant executed on that same residence where you and others were found inside?

THE DEFENDANT: Yes, sir.

THE COURT: And did they find 2.1 grams of crack cocaine, baggies, digital scales, cellular telephones, a money counter, and Smith & Wesson model 6D73738? Is that accurate?

THE DEFENDANT: Yes, sir.

At no time during his plea hearing did Maye indicate that he did not understand the charges against him. He did ask the court to provide "more detail" about his right to trial, and indicated that he wanted to know what his exact sentence would be; the court answered his questions and attempted to make sure Maye understood the answers.

It was not until five months later at his third sentencing hearing, on August 23, 2007, that Maye indicated that he "was kind of confused on one of the charges." He wanted to know "how [he] got charged with the 924(c)" and said that he wanted to "back away" from that plea. Maye explained: "I mean, I'm not denying the fact that I had the gun, but as far as what I learned from being in jail, like the 924(c) is committing a crime by having a gun." The court instructed him:

> The 924(c) charge charged you with possession of a firearm in furtherance of a drug trafficking crime. You had it in your possession for use in a drug trafficking crime. You're not being charged with brandishing it or otherwise using it. You had it, and that was sufficient. Specifically, the elements that you previously heard were that you, Ricco Maye, possessed a firearm in furtherance of a drug trafficking crime. . . .

After the district court explained the elements of the offense to which Maye had pled guilty, the following exchange occurred:

> MAYE: Okay. Well, I think I was just under the impression that I was being charged for having a gun period, point blank.
>
> COURT: I'm sorry. Come again with that.
>
> MAYE: I said I was under the impression that I was just being charged with having the gun in my apartment. From what I learned from in jail or — I mean —
>
> COURT: Which is the best place to get legal advice, is the jail, right?

Okay. So why don't you — why don't you learn from your lawyer who is standing right next to you, the one that's passed the bar, unlike your friends in the county jail.

All right. Why don't you gentlemen have a seat and chat about this for a moment. Okay?

\*\*\*

DEFENSE COUNSEL: Your Honor, I have explained to Mr. Maye to the best I can the elements of the offense and why he's guilty of them or why I believe he's guilty of them, and I don't know that I can do anymore — or that anybody can do anymore, and I'm still at this time not certain that Mr. Maye understands why the situation — given the facts of the situation as were explained and applying the law to those facts why that makes him guilty of the offense. He has requested that the Court explain it to him, and that's where we are.

\*\*\*

COURT: Mr. Maye, are you guilty as charged [. . .] with respect to Count 2, the possession of a firearm in furtherance of a drug trafficking crime [. . .]?

DEFENSE COUNSEL: He'd like to ask counsel a question, Your Honor.

COURT: Yes.

DEFENSE COUNSEL: I think Mr. Maye is clear now.

COURT: And so he could answer my question?

MAYE: Yes.

COURT: You are guilty of Counts 1 and 2 as charged, correct?

MAYE: That's correct.

COURT: And you understand why you're guilty?

MAYE: Yes, I understand now.

COURT: Why don't you tell me one more time. Why are you guilty?

MAYE: [. . .] and on Count 2, I was guilty because I had — I just hand the gun period, point blank. I was just under the impression that —

COURT: You had the gun with you, and you were selling crack cocaine?

MAYE:  Are you saying with me, like, on me?

COURT:  No.  In your possession, in your constructive possession, in your apartment?

MAYE:  Oh, yes, it was in my apartment.

COURT:  Okay.  And it was your gun?

MAYE:  Yes.

COURT:  And it was in your apartment?

MAYE:  Yes.

COURT:  And it was — nobody else lived there?

MAYE:  No.

COURT:  Okay.  Very good.

MAYE:  Oh.

COURT:  Go ahead.

MAYE:  All right.  But the thing — the main thing I was confused about is that the sale took place on the front porch and not in my apartment, so I was thinking that the 924 means that the crime would have to happen at the same place that the gun was at.

Maye never argued before the district court — at his plea hearing or at any of his three sentencing hearings — that his plea was uninformed or based on insufficient facts. Our review, therefore, is for plain error.  We may vacate Maye's conviction only if "(1) there was error that (2) was plain, (3) affected a substantial right, and (4) 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *United States v. Robinson*, 547 F.3d 632, 640 (6th Cir. 2008) (quoting *United States v. Martin*, 520 F.3d 656, 658 (6th Cir. 2008)).  This is an "exceedingly deferential" standard, *United States v. Kemp*, 546 F.3d 759, 764 (6th Cir. 2008); "'[t]he Supreme Court and numerous federal courts have repeatedly stated that the plain error doctrine is to be used sparingly, only in exceptional circumstances, and solely to avoid a miscarriage of justice.'" *United States v. Gold Unlimited, Inc.*, 177 F.3d 472, 483 (6th Cir.1999). Put another way, the error must be "so plain that the trial judge . . . [was] derelict in

countenancing it." *United States v. Herrera-Zuniga*, 571 F.3d 568, 589 (6th Cir. 2009) (quoting *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006)).

While acknowledging that our review is for plain error, the majority adopts the most uncharitable reading possible of the exchanges between Maye and the district court. The majority contends that "it was obvious" that the court was "confused as to what exactly was required to establish guilt of a section 924(c) possession-in-furtherance charge." Maj. Op. at 7. Specifically, the majority states that the "various principals," including the court, "did not believe that 'a specific nexus between the gun and crime charged' need be shown but, rather, that the government need show only that the defendant possessed a firearm and that the firearm was located somewhere near the illegal drug transaction." *Id.* The majority even asserts that Maye's "jailhouse acquaintances" understood the "the proper preconditions for a section 924(c) conviction, while the district court. . . [led] Maye astray." Maj. Op. at 13.

The record contradicts this gratuitous jab at the district court. Section 924(c) criminalizes not the mere possession of a firearm, but possession in furtherance of a drug trafficking crime. The district court correctly explained to Maye that a conviction under 924(c) requires more than mere possession but does not require a showing that the firearm was brandished or otherwise used.

Given our stringent standard of review, we cannot say that the district court committed any error — certainly not "plain" error — in accepting Maye's guilty plea or in refusing to allow him to withdraw it. Although Maye continued to express confusion about how he could be convicted given that the gun was in the apartment while the transaction occurred on the porch, he did not dispute that he possessed the gun in furtherance of his crack-dealing business. To be sure, Maye wanted to withdraw his plea because he questioned the sufficiency of the nexus between the firearm and his drug trafficking. But the district court was not required to accept Maye's post hoc assertion that he did not understand the charge to which he had pled guilty; and to the extent that Maye was arguing that he overestimated the strength of the government's case, he did not provide the court with a basis for allowing him to withdraw the plea.

The majority quotes a lengthy excerpt from the sentencing hearing transcript "to demonstrate," it claims, "the consistency with which the district court expressed a mistaken understanding that a section 924(c) conviction for possession of a firearm in furtherance of a drug-trafficking crime could be established simply by evidence that a gun was present on the premises where a drug sale occurred." Maj. Op. at 12. Noticeably absent, however, is any serious attempt by the majority to identify any contextually supportable statements by the district court that demonstrate this alleged misunderstanding. In a footnote, the majority points out my acknowledgment that the court "stated plainly to Maye that "[y]ou had it, and that was sufficient" and asserts that I fail to take "those unambiguous words at their face value." Maj. Op. at 12 n.2. Rather than attempt to explain how one sentence extracted from a five-page colloquy demonstrates a consistent error, the majority simply declares that the sentence is "unambiguous" (but does not indicate what the unambiguous meaning is) and accuses me of "imputing some hidden explanatory meaning" and engaging in "judicial creationism" for daring to read the statement in context. *Id.*

What the district court meant when it told Maye that "[he] had it, and that was sufficient" is not hidden and needs no imputation. Again, the full paragraph reads:

> The 924(c) charge charged you with possession of a firearm in furtherance of a drug trafficking crime. You had it in your possession for use in a drug trafficking crime. You're not being charged with brandishing it or otherwise using it. You had it, and that was sufficient. Specifically, the elements that you previously heard were that you, Ricco Maye, possessed a firearm in furtherance of a drug trafficking crime. And I would assume that it was based upon that fact that you were charged with it, that you did so knowingly and intentionally, and that you did this on or about the date that was alleged in the indictment in the Southern District of Ohio.

The context demonstrates that the court did *not* consider mere possession of a firearm, without any nexus to a drug trafficking crime, to constitute an offense under 18 U.S.C. § 924(c). The court twice noted — both before and after saying "[y]ou had it, and that was sufficient" — that Maye was charged with possessing the firearm *in furtherance of a drug trafficking crime*. The court even defined "in furtherance" by explaining that

Maye was charged with possessing the gun "for use in a drug trafficking crime"; at the same time, the court explained that Maye was not being charged with actually using or brandishing the weapon. In this way, the court's comment that "[y]ou had it, and that was sufficient" was intended to distinguish a possession-in-furtherance charge under 924(c) from a charge of using or carrying a weapon under that same subsection. Under this interpretation of the colloquy (and it is not "plain" that it should be otherwise interpreted), the court did not err.

### Maye's Plea to the § 924(c) Charge Had a Sufficient Factual Basis

The majority incorrectly holds that "the prosecution never identified evidence that would meet that more stringent 'in furtherance standard[,]'" Maj. Op. at 12, and even states that the government's evidence "leads to the conclusion that the firearm was *not* possessed to advance or promote the drug trafficking offense[,]" Maj. Op. at 13 n.3. In reaching this conclusion, the majority ignores our deferential standard of review and relevant caselaw.

In *United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001), we held that "the possession of a firearm on the same premises as a drug transaction would not, without a showing of a connection between the two, sustain a § 924(c) conviction." "In order for the possession to be in furtherance of a drug crime," we explained, "the firearm must be strategically located so that it is quickly and easily available for use." *Id.* Factors we consider in determining possession in furtherance of a drug trafficking crime include: "whether the gun was loaded, the type of weapon, the legality of its possession, the type of drug activity conducted, and the time and circumstances under which the firearm was found." *Id.* Although this "list of factors is not exclusive . . . it helps to distinguish possession in furtherance of a crime from innocent possession of a wall-mounted antique or an unloaded hunting rifle locked in a cupboard." *Id.*

Here, application of each of those factors supports a finding that Maye possessed the firearm in furtherance of a drug trafficking crime. The firearm was loaded. It was a .38 caliber revolver, a handgun designed for quick access and easy maneuverability. Maye did not acquire the revolver legally but bought it "off the street." The type of drug

activity conducted was a hand-to-hand transaction, one where a dealer would want the protection of a firearm. The revolver was found the same day the drug transaction occurred, while Maye was still in the residence. From the table on which the gun was found, officers also recovered 2.1 grams of crack cocaine, plastic baggies, digital scales, several cellular telephones, a significant amount of cash, and a money counter.

The majority points out that Maye did not brandish the gun during his transaction with the confidential informant, did not point out the gun to the informant, and did not otherwise threaten the informant with the gun. These facts are true enough, but are completely irrelevant: Maye did not plead guilty to using or brandishing the gun; he pled guilty to possessing it in furtherance of a drug trafficking crime. And the fact that Maye ultimately moved the transaction to another location because of nearby police activity does not mean that he did not possess the gun in furtherance of his drug trading. The facts were sufficient to show that the revolver — like the scales, baggies, and other paraphernalia discovered along with it — was another tool of Maye's trade. The majority argues that my "[m]erely stating such a conclusion . . . does not necessarily make the statement true." Maj. Op. at 13 n.3. But it is the majority opinion that fails to explain its conclusion — that is, the majority opinion does not explain how application of the *Mackey* factors leads to a conclusion that Maye did *not* possess the gun in furtherance of his drug trade.

Indeed, the facts here are strikingly similar to those in *Mackey*. In that case, police arranged for a confidential informant to purchase crack cocaine at a particular house. The next day, officers executed a search warrant at the house and found "an illegally possessed, loaded, short-barreled shotgun in the living room of the crack house, easily accessible to the defendant and located near the scales and razor blades. Defendant, stopped by police near the gun, possessed cocaine and a large sum of cash." *Mackey*, 265 F.3d at 462. We held that "[f]rom the evidence presented, a reasonable jury could infer that the purpose of the firearm was to provide defense or deterrence in furtherance of the drug trafficking for which defendant was arrested." *Id.* at 462-63. Likewise, it was not plain error for the district court to find that the government's

proffered facts all tended to show that Maye possessed the firearm in furtherance of the drug transaction; without a doubt, the firearm here was not like a "wall-mounted antique or an unloaded hunting rifle locked in a cupboard." *Id.* at 462.

### *A Remand for Resentencing on the Distribution Count is Unwarranted*

The majority also decides that we should vacate Maye's sentence on the distribution count and remand for resentencing so the district court can determine whether to depart from the crack guidelines based on policy considerations. In *Kimbrough v. United States*, 552 U.S. 85, ___, 128 S.Ct. 558, 575 (2007), the Supreme Court held that a sentencing court may use its discretion to depart from the crack guidelines, even in the mine-run case. This year, in *Spears v. United States*, ___ U.S. ___, 129 S.Ct. 840, 843-44 (2009), the Court made it clear that a sentencing court may depart from the guidelines based solely on policy considerations. But neither *Kimbrough* nor *Spears* provided any basis for a presumption of error just because a sentencing court did not, *sua sponte*, expound on the scope of its discretion or explain why it had decided to stick with the guidelines' recommendation. Rather, our decisions — even after *Kimbrough* and *Spears* — "make clear that there should be some indication of error in the record justifying remand." *United States v. Guest*, 564 F.3d 777, 779 (6th Cir. 2009). "[T]o justify a remand . . . an appellant must identify a specific error in the proceedings below[,]" *id.*, which Maye has failed to do.

In *Guest*, we rejected an argument similar to that made here by Maye, and declined to remand for resentencing because there was "no indication that the district court had a policy disagreement with any of the relevant Guidelines . . . ." *Id.* Although the district court in *Guest* affirmatively indicated "that it understood its authority to deviate from the relevant guidelines calculation," Maj. Op. at 16, we may not read the court's silence here to mean that it misunderstood its discretion. "We do not require that a district court explicitly state that it is aware of its discretion" to impose a below-Guidelines sentence. *United States v. Santillana*, 540 F.3d 428, 431 (6th Cir. 2008) (citing *United States v. Puckett*, 422 F.3d 340, 346 (6th Cir. 2005)). "Rather, we presume that the district court understood its discretion, absent clear evidence to the

contrary." *Id.* (citing *United States v. Crouch*, 288 F.3d 907, 910 (6th Cir. 2002)). And it remains the rule in this Circuit that a defendant must point to some sentencing error to warrant a remand. *Guest*, 564 F.3d at 779.

The majority notes that "[w]hen the guidelines were amended . . . the district judge . . . simply reduced the relevant offense level . . . and again imposed the lowest sentence within the range without further explanation" and concludes that this fact provides "reason to believe" that the court failed to recognize its authority to categorically reject the crack guidelines on policy grounds. Maj. Op. at 16. Although a judge who chooses a sentence outside the guideline range apparently is aware of his discretion to do so, it does not follow — nor have we ever held — that a judge who imposes a within-guidelines sentence presumably is unaware of his discretion to do otherwise. Indeed, the majority's suggestion that the court's repeated imposition of within-guidelines sentences is somehow indicative of ignorance runs counter to the rule that "sentences falling within the advisory Guidelines range may be considered presumptively reasonable . . . [while] [s]entences that deviate from the Guidelines . . . are afforded no such presumption." *Herrera-Zuniga*, 571 F.3d at 582 (citing *Rita v. United States*, 551 U.S. 338, 347-51 (2007)).

Ultimately, there is nothing in the record to suggest that the district court here was inclined to disagree with the crack guidelines on policy grounds or that Maye made any argument that the crack guidelines were unfair. "There is no appealable issue saved . . . when a defendant wishes to appeal a discretionary factor and does not request the judge to exercise such discretion during the sentencing hearing." *United States v. Simmons*, 501 F.3d 620, 624 (6th Cir. 2007). Maye did not ask the court to exercise discretion to depart downward, and it was not plain error for the court not to do so.

Accordingly, I would affirm Maye's conviction and sentence on both counts.