*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 11a0037p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,

　　　　　　　　*Plaintiff-Appellee,*

　　　*v.*

DANIEL SZYMANSKI,

　　　　　　　　*Defendant-Appellant.*

No. 09-3524

_____

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 08-00417-001—Jack Zouhary, District Judge.

Argued: January 13, 2011

Decided and Filed: February 7, 2011

Before: MERRITT, ROGERS, and WHITE, Circuit Judges

_____

## COUNSEL

_____

**ARGUED:** Jeffrey B. Lazarus, FEDERAL PUBLIC DEFENDER'S OFFICE, Cleveland, Ohio, for Appellant. Alexandra R. Gelber, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Jeffrey B. Lazarus, FEDERAL PUBLIC DEFENDER'S OFFICE, Cleveland, Ohio, for Appellant. Alexandra R. Gelber, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

_____

## OPINION

_____

　　　MERRITT, Circuit Judge. Defendant Daniel Szymanski pled guilty to receiving child pornography and was sentenced to five years' imprisonment, the statutory minimum sentence applicable to that charge. On appeal, Szymanski raises a variety of constitutional arguments, principally contending that the mandatory minimum under

1

which he was sentenced is unconstitutional in light of *United States v. Booker*, and because another offense—possession of child pornography, with which he was not charged and which, he alleges, is substantially similar if not identical to the receipt charge—does not carry a mandatory minimum sentence, a state of affairs which he suggests violates separation of powers. However, in this somewhat unusual case, we do not reach the merits of the claims Szymanski brings on appeal. Instead, we raise sua sponte the issue of the validity of Szymanski's guilty plea, in light of two features of this case. First, the Supreme Court, over sixteen years ago, construed the crime at issue to contain an element not necessarily required by its statutory text: a defendant charged with receipt of child pornography must have knowledge, not only as to the act of receipt itself, but also as to the fact that the material he is receiving features minors engaged in explicit sexual conduct. Second, this interpretation of the statute as containing a demanding scienter requirement was never explained to the defendant during the rather brief colloquy preceding the district court's acceptance of his guilty plea. Indeed, our examination of the record leaves us with the strong impression that the defendant, his counsel, as well as government counsel at the arraignment did not have an adequate understanding of the nature of the charge at issue. Moreover, there is evidence that the defendant specifically denies having any knowledge at all with respect to the content of the material he was receiving at the time of receipt, the very element the Supreme Court held necessary for conviction under the receipt charge. Accordingly, we **VACATE** the defendant's conviction and sentence, and **REMAND** the case for further proceedings.

**I.**

The record in this case is relatively limited, and the following factual account is largely based on the Presentence Report prepared by the United States Probation Office after Szymanski's guilty plea and before he was sentenced. The Report was drawn from accounts provided by government investigators and prosecutors, and from an interview with Szymanski himself.

In March 2008, the United States Secret Service received word that a computer with the user ID "SKYPILOT81" had potentially been involved in the receipt of child

pornography, and traced that user ID to Szymanski. One month later, on April 30, 2008, presumably after being contacted by investigators, Szymanski voluntarily reported to the Toledo office of the Secret Service, and in an initial interview admitted to accessing child pornography on his computer "by means of chat rooms," between July 2006 and July 2007. Signing written waivers, he consented to a search of his residence, and the removal and search of his computer. Those searches uncovered thirty-three electronic images of child pornography—specifically, depictions of prepubescent minors under the age of twelve, "at least one of which depicted sadistic or masochistic conduct"—contained within a folder on his computer entitled "ct," apparently a meaningless designation.

In a post-conviction interview with the Probation Office, Szymanski offered the only direct account present in the record concerning how he came to receive these images. He maintained that his entry into the chat rooms was not for a sexual purpose; he claimed he was looking for someone to talk to about teens, and stated that his conversations in the chat room concerned parenting. (His youngest child would have been approximately twenty-three years old at the time of the charged conduct, though Szymanski did report a strain in his relationship with him after the death of his mother, Szymanski's ex-wife.) He stated that the illicit images were sent to him, apparently via email, by others in the chat rooms over a short period of time. He said that he "initially" believed the images were of older teens, who were not minors. He reported viewing them "out of curiosity," admitted saving some of them to the "ct" file where they were eventually found by the authorities, and denied ever being sexually aroused by the material.

On October 9, 2008, a one-count information was filed in the Northern District of Ohio, charging Szymanski with the knowing receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2). At his arraignment on November 4, 2008, Szymanski waived indictment and pled guilty, after a colloquy with the district court that will be relayed in greater detail below. There was no plea agreement.

The only significant dispute in this case between Szymanski and the government occurred after the plea and prior to sentencing, and was apparently incited by the district court. After receiving the Presentence Report and finding it to "identif[y] several factors that may support a downward variance," the district court invited the parties to submit briefs concerning "the appropriateness of such a variance and specifically, whether the Court has legal authority to vary below the statutory minimum mandated by 18 U.S.C. § 2252(a)(2)." The parties complied with this request, with Szymanski arguing that the district court did have legal authority to vary below the statutory minimum, which, he argued, was unconstitutional.

After a sentencing hearing, the district court reluctantly sentenced Szymanski to the statutory minimum of five years' imprisonment. In a written Sentencing Memorandum, the district court first justified a downward variance from the Guidelines range of 70 to 87 months (citing, among other features of this case, the defendant's cooperation with authorities and his remorse), and then expressed grave reservations about the sentence. The court concluded that it was "handcuff[ed]" by the situation. The court appeared particularly troubled by the substantial similarity it perceived between the charged offense, receipt of child pornography—which carries a mandatory minimum—and possession of child pornography, which carries no minimum sentence. The district court found that this similarity, which it called "a distinction without a difference," created "the potential for gross disparities in sentences" and "effectively places in the prosecutor the ability to determine the defendant's sentence, a role reserved for the judiciary." Nonetheless, the district court imposed the statutory minimum sentence, and indicated that it was the job of this Court to "determine, at least in this context, whether mandatory minimum sentences violate the separation of powers since the advent of *Booker* and [its] progeny." After this rather explicit invitation, this appeal followed.

**II.**

As indicated above, the district court itself, in its request that the parties brief whether it could depart from the mandatory minimum sentence, essentially framed the issues raised by Szymanski on this appeal, which largely challenges the mandatory minimum applicable to the receipt offense through a variety of constitutional arguments concerning the import of *United States v. Booker* and separation of powers. However, we do not reach those issues in today's opinion. We find a more basic issue unnoticed by the prosecution, the defendant, and defendant's counsel that may avoid the need to reach the constitutional issues: whether, at his plea hearing, Szymanski was adequately informed of the nature of the receipt charge, as required by the Federal Rules of Criminal Procedure. Our review of the record does not support such a finding.

The issue of the validity of Szymanski's guilty plea was entirely unraised by the parties, and so—after requesting the parties come to oral argument prepared to discuss the issue—we raise it sua sponte. "Although 'the general rule [is] that an appellate court will not consider sua sponte arguments not presented or urged by the litigants[,] . . . [e]xceptional cases or particular circumstances may prompt a reviewing court, where injustice might otherwise result or where public policy requires, to consider questions neither pressed nor passed upon below.'" *Boals v. Gray*, 775 F.2d 686, 691 (6th Cir. 1985) (quoting *Nuelson v. Sorenson*, 293 F.2d 454, 462 (9th Cir. 1961)). Here, the potential injustice is as clear as the legal error is basic: Szymanski may have unknowingly pled to an offense—subjecting him to a mandatory minimum the district court sought not to impose—whose elements he did not understand and which he may not have committed. Accordingly, it is necessary in our view to address this issue.

*A. The Receipt Offense and* X-Citement Video

The statute establishing the receipt offense reads, in pertinent part:

[Any person who] knowingly receives, or distributes, any visual depiction using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce, or which contains materials which have

> been mailed or so shipped or transported, by any means including by computer, or knowingly reproduces any visual depiction for distribution using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or through the mails, if--
> (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
> (B) such visual depiction is of such conduct . . .
> [shall be punished as provided in subsection (b) of this section.]

18 U.S.C. § 2252(a)(2). The word "knowingly" may readily appear to modify only "receives," and not the definition of the material it is a crime to receive; that definition comes some eighty-four words after "knowingly," in a separate clause contained within the two subsections in the above-quoted provision. *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 80-82 (1994) (Scalia, J., dissenting). The statute can be read to require only that the "receiv[ing]" be "knowing[]"—that is, that the physical acceptance into possession that is the bare act of receipt be committed with knowledge that one is engaged in the act of receiving something—but not to require that the defendant have any knowledge with respect to what it is he receives. By way of example, the statute would appear to make into a crime—indeed, one punishable by a five-year statutory minimum sentence of imprisonment—the situation of purely accidental receipt, where someone innocently signs for a gift-wrapped package which unknown to the recipient is stuffed with child pornography.

This reading of the receipt offense was explicitly rejected by the Supreme Court almost two decades ago. In *United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994), the Court, consciously departing from what it called the "most natural grammatical reading" of the statute, held that "knowingly" extends "both to the sexually explicit nature of the material and to the age of the performers." *Id.* at 68, 78. In reaching this conclusion, the Supreme Court relied in part on the general background presumption in the criminal law that a requirement of scienter or "evil intent" ordinarily applies wherever a statutory element criminalizes otherwise innocent conduct. *See id.* at 70–73 (citing *Morissette v. United States*, 342 U.S. 246 (1952)). Finding that "one would reasonably expect to be free from regulation when trafficking in sexually explicit, though not obscene, materials involving adults" and that "the age of the performers is the crucial

element separating legal innocence from wrongful conduct" the Court reasoned that this "evil intent" presumption would best be satisfied by reading "knowingly" to apply to the subparts of the statute defining the illicit material; the result of the case is that scienter or knowledge as to both the sexually explicit nature of the material and the age of the depicted subjects is an element of the offense. *Id.* at 72–73, 78. In other words, the Supreme Court interpreted § 2252(a)(2) to mean that defendant convicted of receiving child pornography must have known, not just that he was receiving *something*, but that what he was receiving was child pornography.

### B. Rule 11 and Szymanski's Plea Hearing

The consideration and acceptance of a guilty plea is governed by Federal Rule of Criminal Procedure 11(b). One provision of that rule is relevant to this case: Rule 11(b)(1)(G), which requires the district court, addressing the defendant in open court, to "inform the defendant of, and determine that the defendant understands . . . the nature of each charge to which the defendant is pleading." In interpreting this rule, we have previously held that simple cases may require only that the charge be read aloud to the defendant with an opportunity for the defendant to ask questions, but that "further explanation may be required" in "more complex" cases. *United States v. Valdez*, 362 F.3d 903, 908 (6th Cir. 2004) (internal quotation marks and citation omitted). Concerning the specific elements of the crime, we have held that "[s]ome rehearsal of the elements of the offense is necessary for any defendant." *United States v. Syal*, 963 F.2d 900, 905 (6th Cir. 1992); *see also Valdez*, 362 F.3d at 909 ("At a minimum, the defendant must understand the 'critical' or 'essential' elements of the offense to which he or she pleads guilty."). Failure to comply with Rule 11(b)(1)(G) is plain error, and "cannot be said to be harmless, even for an educated, well-represented defendant." *United States v. Lalonde*, 509 F.3d 750, 759–60 (6th Cir. 2007) (quoting *Syal*, 963 F.2d at 905).

The fact that the Supreme Court read § 2252(a)(2) to contain a scienter requirement as to the sexually explicit nature of the material and the age of the depicted subjects was never mentioned during the colloquy surrounding the district court's

acceptance of the guilty plea, despite apparent confusion on the issue. The court appears primarily to have assured itself of Szymanski's understanding of the nature of the charge against him during the following exchange, after asking the Assistant U.S. Attorney to summarize the information containing the receipt charge:

> AUSA: The information charges that from on or about July 29, 2006, through on or about July 31, 2007, that the defendant did knowingly receive in interstate and foreign commerce by means of a computer child pornography and computer image files which had been shipped and transported in interstate and foreign commerce. Thank you.
> THE COURT: Mr. Szymanski, do you understand the nature of the charge?
> THE DEFENDANT: Yes, sir.

Notably, the AUSA's summary merely paraphrases the language of § 2252(a)(2). The summary completely omits the Supreme Court's substantive gloss, which requires that Szymanski, at the time he "did knowingly receive," knew that what he was receiving was child pornography.

Later in the proceeding, the district court apparently attempted both further to inform Szymanski of the nature of the charge and to elicit the plea's factual basis by having the AUSA summarize the Government's investigation, and inquiring whether Szymanski objected to this account, in the following two exchanges:

> AUSA: Now, had this matter proceeded to trial, the government expects that the evidence would have shown beyond a reasonable doubt that an investigation was begun in Kentucky regarding an individual who was involved in receiving and distributing child pornography. As a result of that investigation, the identity of Mr. Szymanski was learned, and eventually that information was passed on to the United States Secret Service. The Secret Service went to Szymanski's house. They discussed this with him. They asked him to consent to a removal of his computer and subject it to a search. He agreed. The computer was removed, it was searched, and approximately 33 images of child pornography [were] found on the computer. Upon being confronted with this evidence at a later time, Mr. Szymanski, after waiving his Miranda warnings, agreed that he had received that over the Internet through interstate commerce. Thank you.
> THE COURT: Did you have an opportunity to listen carefully, Mr. Szymanski, to what the government lawyer just said?

> THE DEFENDANT: Yes, sir.
> [...]
> THE COURT: **Then I want to briefly ask you to reflect for a moment, Mr. Szymanski, on Mr. Secor's recital of the facts underlying the information in this case:  Essentially that there was a removal of your computer pursuant to a search, and that an examination of your computer revealed 33 images of child pornography that you had received through interstate commerce.** Do you disagree with any part of that statement or wish to add anything to the statement made by Mr. Secor?
> THE DEFENDANT: No, sir.
> THE COURT: Do you wish to make any corrections to that statement?
> THE DEFENDANT: No, sir.

(Emphasis added.)  The factual account here, assented to by Szymanski, concerns only the results of the removal and search of Szymanski's computer.  Again, no mention is made of the scienter element recognized by *X-Citement Video* requiring knowledge at the time of receipt as to the material's sexually explicit nature and the minority of the depicted subjects; there is no description of how the images arrived on Szymanski's computer—or, more critically, his knowledge when this occurred—apart from the fact that he "received" them.  This account may have been sufficiently illustrative to inform Szymanski of the nature of the charge were the charged offense possession, which is a separate crime defined elsewhere in the statute,  18 U.S.C. § 2252(a)(4)(b).  But the omission of anything even approaching a reference to the scienter requirement recognized by *X-Citement Video* — along with statements suggesting there was no such requirement — overlooks a crucial distinction between the receipt and possession offenses.  *See United States v. Malik*, 385 F.3d 758, 760 (7th Cir. 2004) (noting that "the receipt offense requires proof that the defendant knew that the persons depicted were minors" but that "the possession offense lacks that scienter requirement").  Indeed, it seems possible that a layperson such as Szymanski, being informed of the nature of this charge in this manner, would simply assume that the receipt statute covered *any* situation where someone possessed but did not produce child pornography, since bare receipt, without the added requirement recognized by *X-Citement Video* of knowledge as to what is being received, would be logically entailed in every possession of this sort.

*C. The Error's Effect on the Proceedings*

Technical violations of Rule 11 do not merit the vacating of a conviction obtained by a guilty plea; Rule 11 contains a harmless-error provision stating that an error is harmless only if it does not "affect substantial rights." Fed. R. Crim. P. 11(h). As explained more fully below, in this case the defendant apparently denied, after pleading guilty, the very element the Supreme Court held necessary for conviction. The district court presiding over his case appeared to be unaware of the element's existence, and neither counsel for the parties advised the court of the scienter requirement of the Supreme Court case on point. Accordingly, we find that the omission concerning the rule of *X-Citement Video* was not harmless.

While the record is far from clear about precisely how child pornography found its way onto his computer, Szymanski appears in the Presentence Report actually to *deny* any knowledge that the material he received was child pornography at the time he received it. As initially mentioned above in our description of the facts, Szymanski in his post-conviction interview with the Probation Office said he "arrived in chat rooms regarding teens, looking for someone to talk to about teens." He "denied that his search for teen sites was of a sexual nature," and "reported that while chatting with other adults, the nature of his online conversations were about their parenting experiences, and that his position in the chats was from a behavioral nature." He then received what turned out to be child pornography via email after his email address was placed on a mailing list, and "someone in the chat room sent out pictures." As to his state of mind at the time of receiving the images, he "stated his belief that the images were initially of older teens (ages 18 and 19)." In short, Szymanski's version of events—in which he conspicuously denies any knowledge that the material was child pornography at the time he received it—is consistent with his being factually innocent of the receipt charge as defined by *X-Citement Video*.

Finally, the district court in this case disregarded *X-Citement Video*'s scienter requirement throughout this case, and appeared to conflate the receipt and possession offenses, just as a layperson might from the bare summary of the information that was

delivered to Szymanski at his plea hearing.  The district court was clearly unable to ascertain whether Szymanski understood his plea.  *See United States v. Maye*, 582 F.3d 622, 626–31 (6th Cir. 2009) (setting aside a guilty plea under Rule 11(b)(1)(G) on plain error review where the district court "expressed a mistaken understanding" of the conduct criminalized by the statute under which the defendant pled guilty).

Well after the district court's acceptance of Szymanski's plea, the government at his sentencing hearing for the first time indicated to the district court that the receipt and possession offenses were distinct because "to prove receipt [the prosecution] need[s] to do more than show they possessed it on their computer" and because the prosecution "need[s] to show at some point prior to that they sought out the material."  No one present at the sentencing hearing noted the stark contrast between this version of the receipt offense and the one presented to Szymanski at his plea hearing, where precisely all that was shown was that he "possessed [child pornography] on [his] computer" and nothing at all was said about whether he "at some point prior to that . . . sought out the material."[1]  Nonetheless, in its Sentencing Memorandum and in the context of addressing its constitutional concerns with the receipt statute, the district court still maintained that the distinction between receipt and possession was "a distinction without a difference."  But there *is* a difference between the two offenses, and it is one highlighted by the very Supreme Court case that no one in this proceeding ever explicitly mentioned: the prosecution must prove that the defendant knew at the time of receipt that the material he received featured underage subjects engaged in sexually explicit conduct.  *See Malik*, 385 F.3d at 760 (noting that "the possession offense lacks [this] scienter requirement").

---

[1]At oral argument in this appeal, the government, while not contesting that a receipt conviction required proof of scienter as described in *X-Citement Video*, retreated from its characterization below of that element as requiring proof of "s[eeking] out" the material.  Our disposition of this case turns on the fact that the scienter requirement was never mentioned at all, and so we need not address its precise contours here.

**III.**

For the above stated reasons, we **VACATE** Szymanski's conviction and sentence, and **REMAND** the case to the district court for further proceedings consistent with this opinion.