NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a1036n.06

No. 13-3137

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

Dec 18, 2013

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| KEVIN DENNIS, | ) | SOUTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

Before: MCKEAGUE and STRANCH, Circuit Judges; COLLIER, District Judge.[*]

**JANE B. STRANCH**, Circuit Judge. Kevin Dennis appeals his conviction based on a guilty plea. Specifically, he alleges that the district court committed several violations of Federal Rule of Criminal Procedure 11 that amount to plain error and deprived him of a knowing and voluntary plea. Dennis also appeals the procedural reasonableness of his sentence. We **AFFIRM** Dennis's conviction for the reasons below, but **REMAND** for resentencing in light of intervening precedent.

## I. FACTS AND PROCEDURAL BACKGROUND

In 2006, Kevin Dennis entered into an agreement to plead guilty to four counts of a ten-count indictment. The four counts were Count 2 for health care fraud, Count 4 for money laundering, Count 7 for manufacturing cocaine base (or crack), and Count 9 for possession of firearms in

_____

[*]The Honorable Curtis L. Collier, United States District Judge for the Eastern District of Tennessee, sitting by designation.

-1-

furtherance of a drug trafficking crime. Two counts to which Dennis did not plead guilty play a role here: Count 8 for possession with intent to distribute, and Count 10 for possession of a firearm by an unlawful drug user.

At Dennis's plea hearing, the excluded Count 8 resurfaced. As to Count 7, the court asked Dennis how he pleaded to "Count 7 . . . possession with intent to distribute," which of course was not the offense in Count 7. But when explaining the elements of the offense, the court accurately listed the three elements for the offense in Count 7, *manufacturing* cocaine base: "manufactur[ing] in excess of five grams of a mixture containing a detectable amount of cocaine base, . . . [doing] so knowingly and intentionally" and doing so within the Southern District of Ohio. *See* 21 U.S.C. § 841. As to Count 9, the court accurately named the offense, but then described the elements as follows:

> First, that you committed the drug trafficking offense alleged in Count 7 which we have just reviewed, that is manufacturing a substance containing a detectable amount of cocaine base; second that you knowingly possessed a firearm; third, that the possession was in furtherance of the drug trafficking crime; and fourth, that these acts occurred in whole or in part within the Southern District of Ohio.

*See* 18 U.S.C. § 924(c)(1)(A). The indicted offense for Count 9 actually stated that Dennis possessed the firearm "in furtherance of a drug trafficking crime . . . that is, manufacturing and possession with intent to distribute," so it referred to the offenses in both Count 7 and Count 8.

The other relevant portion of the plea hearing contains the factual basis the Government provided to support the guilty plea. A special agent testified that the Government executed a search warrant at Dennis's house after investigating him for healthcare fraud and found:

> Dennis and an acquaintance were present at the execution of the warrant where Dennis possessed a loaded Browning HiPower 9 millimeter semiautomatic pistol. Also located between the box springs and a side rail of the bed where Dennis was sleeping was a loaded Smith & Wesson model 19 357 revolver.

Dennis was escorted out of the residence where he waived his rights and agreed to speak with officers. Dennis told Detective Aaron Byrd of the Columbus division of police that there was a fist size ball of crack cocaine inside the house. Dennis continued saying that he buys approximately five ounces of powder cocaine and rocks it up himself every couple of months. In the basement bathroom cabinet were two large glass containers with a white mixing bowl containing cocaine residue where the powder cocaine was manufactured to cocaine base.

Over 100 grams of cocaine base were recovered from the residence with the bulk of 87.8 grams recovered from inside a gun safe in the basement of the residence.

At the plea hearing, Dennis admitted to these facts and pleaded guilty to Count 7 and Count 9 as well as the other two counts.

Dennis was sentenced on February 1, 2007. Dennis asked to be sentenced to the 120-month statutory minimum associated with Counts 7 and 9, arguing that he was entitled to be sentenced below the 157 to 180 month Guidelines range because of the disparity created by the 100:1 powder-cocaine to crack-cocaine sentencing ratio. Without mentioning the powder-to-crack cocaine disparity specifically, the court said that "there was not much to consider" regarding the drug offenses, and, after considering the remaining sentencing factors under 18 U.S.C. § 3553(a), sentenced Dennis to 157 months imprisonment. The court also directed Dennis to pay $564,630 in restitution, the amount of which he defrauded the Government on the health care charges. There was no more detailed discussion of the amount set for restitution—not in the PSR, not in Dennis's sentencing memorandum, and not in the sentencing transcript.

Dennis now challenges the validity of his guilty plea for Counts 7 and 9 as well as the procedural reasonableness of his sentence. Despite the fact that Dennis was originally sentenced almost seven years ago, his case is before us on direct appeal. This is because his judgment was vacated and re-entered on January 15, 2013 after Dennis successfully appealed a motion under 28

U.S.C. § 2255 on grounds that his original counsel was ineffective for failing to file a notice of appeal.

## II. GUILTY PLEA

Dennis claims that his plea to Counts 7 and 9 were not knowing and voluntary because the district court failed to comply with Federal Rule of Criminal Procedure 11 before accepting his plea. Rule 11 is intended to ensure that a defendant's plea is knowing, voluntary and intelligent by ensuring that he understands his rights, the nature of the crime charged, the consequences of a plea, and the factual basis for concluding that the defendant committed the crime charged. *United States v. Webb*, 403 F.3d 373, 378-79 (6th Cir. 2005). A violation of the rule can undermine the validity of a plea. *Id*. at 378.

Normally, we would review a Rule 11 violation for harmless error. Fed. R. Crim. P. 11(h); *United States v. Martin*, 668 F.3d 787, 791 (6th Cir. 2012). But because Dennis did not object at the plea colloquy, we must instead evaluate this claim for plain error. *United States v. Page*, 520 F.3d 545, 546 (6th Cir. 2008). To establish plain error, Dennis must show "(1) that an error occurred in the district court; (2) that the error was plain, i.e., obvious or clear; (3) that the error affected defendant's substantial rights; and (4) that this adverse impact seriously affected the fairness, integrity or public reputation of the judicial proceedings." *Id*. at 547 (quoting *United States v. Vonn*, 535 U.S. 55, 59 (2002)).

### A. Manufacturing Crack Offense

The only error Dennis alleges as to Count 7 is the district court's incorrect reference to Count 7 as "possession with intent to distribute" even though Count 7 was the manufacturing offense and the Government had agreed to drop the possession with intent to distribute charge. Dennis

argues that the mis-statement was enough to confuse him as to the nature of his guilty plea even though the court read the correct elements of the manufacturing offense and correctly referred to Count 7 as "manufacturing" when discussing Count 9.

Under Rule 11(b)(1)(G), the court accepting a plea must inform the defendant of "the nature of each charge to which the defendant is pleading." This provision merely requires that "the district court must be satisfied, after discussion with the defendant in open court, that the defendant understands the elements of the offense," which usually means that the court must recite the elements the Government would have to prove at trial. *United States v. McCreary-Redd*, 475 F.3d 718, 723 (6th Cir. 2007) (internal quotation marks omitted). Here, the court read the correct elements of the manufacturing offense and confirmed that Dennis understood them. But an otherwise accurate explanation of the nature of an offense can become an inadequate explanation when the court introduces inaccurate information. *See*, *e.g.*, *Martin*, 668 F.3d at 792 (treating the district court's erroneous description of the mandatory minimum as an error, even though the court later correctly described the accurate mandatory minimum). While we hesitate to say that the court inadequately explained the nature of an offense due to a mere mis-statement, the name of an offense carries significant implications, especially here where the named offense was one that the Government agreed to drop. Asking Dennis how he pleaded to the incorrect offense was error, and the error was clear and obvious.

Nevertheless, this error does not amount to reversible plain error unless it affected Dennis's substantial rights. *See Page*, 520 F.3d at 547. A Rule 11 violation only satisfies this element of the plain error standard when the defendant shows a reasonable probability that, but for the error, the

defendant would not have pleaded guilty. *United States v. Dominguez-Benitez*, 542 U.S. 74, 83 (2004).

Reviewing the entire plea colloquy and the remaining record, as we must, we do not find there to be a probability that Dennis would have pleaded differently that is "sufficient to undermine confidence in the outcome" of his case. *Id*. (internal quotation marks omitted). Unlike the error Dennis cites in *United States v. Szymanski*, 631 F.3d 794, 801 (6th Cir. 2011), where the district court completely omitted the scienter element of the offense and was thus unable to determine whether the defendant understood his plea,[1] the court here did not omit necessary elements of the offense. Nor is this case like *United States v. Maye*, 582 F.3d 622, 627 (6th Cir. 2009) where the colloquy revealed that the court was confused about, and provided a mistaken description of, what was required to establish guilt.

Further undermining Dennis's argument is the fact that the plea colloquy contains numerous correct references to Count 7 as a "manufacturing" offense, including one the court made when discussing Count 9 and one the prosecuting attorney made. The accurate and complete descriptions of Count 7 in the indictment and the plea agreement provided sufficient information for Dennis to be aware of the nature of the offense before the plea hearing. The plea colloquy is devoid of any suggestion that Dennis did not understand the nature of Count 7.

Dennis did not attempt to rescind his plea before sentencing, and we see nothing in the record to suggest that Dennis would have had any incentive to plead differently had the court not misstated the charge. The testimony regarding the underlying facts of the offense shows that the Government

---

[1]The Rule 11 question in *Syzmanski* was before the court on harmless error review, but the harmless error standard also limits reversal to situations in which the error affected the defendant's substantial rights. 631 F.3d at 801.

could have proven the manufacturing offense because Dennis admitted that he "rocks up [crack] himself" and officers found a mixing bowl used for manufacturing crack in his home. It is not clear, moreover, that Dennis would have had any incentive to plead differently whether the offense charged was possession with intent to distribute or manufacturing because both offenses fall under the same statute and carry the same statutory and Guidelines penalties. *See* 21 U.S.C. § 841(a)(1); USSG § 2D1.1.

Dennis presents an error but not sufficient evidence to show a reasonable probability that, but for the error, he would not have pleaded guilty. Thus, the error here does not rise to the level of plain error.

**B. Firearm Offense**

Dennis alleges several Rule 11 errors in relation to Count 9, possession of firearms in furtherance of a drug trafficking crime under 18 U.S.C. § 924(c). According to him, these errors in combination deprived him of substantial rights.

First, Dennis argues that the court erred under Rule 11(b)(1)(G) by erroneously describing the elements of Count 9 when it said that the first element was "that you committed the drug trafficking offense in Count 7" even though the indictment listed both "manufacturing and possession with intent to distribute" as predicate offenses for Count 9. It did not. Dennis's argument depends on his assumption that by pleading guilty to Count 9, he was admitting to the dropped possession with intent to distribute charge. But a conviction under 18 U.S.C. § 924(c) only requires that the defendant have committed one of the predicate drug trafficking crimes, not both. We have held that where a defendant may be properly convicted based on one of two elements in the alternative, it does not constitute error to instruct a jury to convict based on one element "*or*" the

other even though the indictment lists the elements with the conjunctive "and." *United States v. Mason*, No. 95-6075, 1997 WL 242088, at *3 (6th Cir. 1997). We see no reason why a plea would be any different.

Second, Dennis argues that the court did not ensure that there was a sufficient factual basis for the crime under Rule 11(b)(3). His argument depends on another alleged error under Rule 11(b)(1)(G): the court should have explained the offense beyond reciting the elements. This one takes a little explaining. Dennis says that the court had an obligation to elaborate on the phrase "in furtherance of" to ensure that he knew that the mere presence of a gun was not sufficient. *See United States v. Mackey*, 265 F.3d 457, 460-61 (6th Cir. 2001) (holding that "in furtherance of" requires more than the mere presence of a gun). He also contends that the court should have provided additional explanation as to which drug trafficking crime was the predicate offense and which gun served as the basis for the offense because, as charged, the offense was "inherently confusing." Because the court did not provide additional explanations, his argument goes, the factual basis provided by the Government's witness could not have been sufficient to ensure that Dennis knowingly pleaded guilty because he did not know the facts failed to show that he committed the offense.

Dennis is correct as to the interplay of Rules 11(b)(3) and 11(b)(1)(G). Under Rule 11(b)(3), "the court must determine that there is a factual basis for the plea" to ensure the plea is accurate and there is some evidence that the defendant actually committed the offense. *McCreary-Redd*, 475 F.3d at 722. The Rule 11(b)(3) requirement for a factual basis is integrally related to the Rule 11(b)(1)(G) requirement that the court rehearse the elements of the offense because the latter is necessary for the defendant to understand the facts in relation to the law. *Id*. at 723. Thus a failure

-8-

to recite the elements can turn an otherwise sufficient factual basis into a Rule 11(b)(3) error, as in *McCreary-Redd*. 475 F.3d at 723-24.

The problem with Dennis's argument is that nothing in the record created an obligation for the court to provide additional explanations of the offense. We have said repeatedly that the court's obligation under Rule 11(b)(1)(G) is to recite the elements of the offense. *E.g.*, *McCreary-Redd*, 475 F.3d at 723. We have looked for further clarification of an offense only where a party, or the court itself, was confused about the elements of the offense. In *Maye*, for example, the court reviewed the entire record and found that the court's plea-hearing questions suggested that mere possession was enough to prove a § 924(c) offense, and the sentencing transcript plainly showed the defendant did not understand that mere possession of a gun was not enough. 582 F.3d at 627-30. Likewise, in *Szymanski*, the court entirely omitted a critical element of the crime. 631 F.3d at 799-801. There is no indication here of a similar misunderstanding on the part of anyone. During the plea colloquy, the court accurately listed all essential elements of the offense and repeatedly used the phrase "in furtherance of a drug trafficking crime"; there was no exchange during the colloquy suggesting that mere possession was sufficient; and there is no evidence anywhere else in the record showing a hole in Dennis's understanding of the elements of the offense.

Nor is there reason to require more evidence here based on the "confusing" nature of the term "in furtherance of" or the fact that Count 9 could have been based on more than one predicate offense and more than one gun. Dennis points to our statement in *Mackey* that the term "furtherance" should be given its natural dictionary definition to mean "helping forward" or "promotion," but he does not explain why a college-educated defendant would not know the ordinary definition of the term. *See Mackey*, 265 F.3d at 460-61. Additionally, the court's recitation

of the elements *did* show that more than possession was required. It said that the offense required "second, that you knowingly possessed a firearm; [and] third, that the possession of the firearm was in furtherance of the drug trafficking crime." As to Dennis's argument that the indicted offense in Count 9 was inherently confusing because it could have been based on multiple predicates and multiple guns, we disagree. The plea, as explained by the court during the colloquy, was predicated only on the manufacturing charge. The fact that Dennis had two guns did not make the law confusing.

Because there was no Rule 11(b)(1)(G) error, we are left only with the question of whether the factual basis was not sufficient on its own. The special agent testifying for the Government said that officers found a loaded semiautomatic pistol and a loaded revolver between the box spring and side rail of the bed where Dennis was sleeping. It is unclear what room Dennis slept in, but the crack and the manufacturing supplies were found in the basement of the same house as the guns. Dennis argues that this testimony was insufficient because the agent did not say that the gun was strategically located for Dennis's use during the manufacture of crack and because it is questionable how a gun could be used in furtherance of manufacturing as opposed to possession with the intent to distribute.

Under *Mackey*, it is not enough for a firearm to be located in the same premises as a drug transaction without a showing of a connection between the two, but it is enough if the gun was "strategically located so that it is quickly and easily available for use." 265 F.3 at 462. Other factors relevant to whether it was possessed in furtherance of the drug trafficking crime include: the type of weapon; whether it was loaded; the legality of its possession; the type of drug activity involved; and the time and circumstances under which the weapon was found. *Id*. The purpose of these

-10-

factors is to distinguish innocent possession—such as a wall-mounted antique rifle—from possession that is actually used to promote the particular type of drug trafficking crime at issue. *Id*.

We do not agree with Dennis that one cannot use a gun "in furtherance of" a manufacturing offense. The gun can be used to protect the stash. *See United States v. Combs*, 253 F. App'x 532, 535 (6th Cir. 2007) (concluding that gun found on a bed headboard was sufficient to prove it was possessed in furtherance of a manufacturing offense); *United States v. Couch*, 367 F.3d 557, 561 (6th Cir. 2004) (holding that a jury can reasonably infer possession in furtherance of a drug trafficking crime if the gun is strategically located to provide defense); *see also United States v. Mobley*, 618 F.3d 539, 547 (6th Cir. 2010) (noting that the information necessary to satisfy the factual basis requirement is lower than that necessary to sustain a guilty verdict at trial). And the testimony includes "some evidence" to suggest exactly that. The guns were loaded and within Dennis's reach while he slept in a house containing a large of amount of crack that he had recently manufactured.

Finally, Dennis asserts that because he told the court that he had not discussed defenses with his attorney, the court should have further inquired into his understanding of the offense to protect his right to counsel. Dennis admits that he changed this answer immediately after conferring with counsel but cites his attorney's later admission during § 2255 proceedings that he had done no legal research as to possible defenses. We decline to hold that a court's obligations under Rule 11(b)(1)(G) are heightened by a later discovery that counsel did not research possible defenses. At the plea colloquy, the defendant himself assured the court that he had been adequately advised. Counsel's arguments are more appropriate for a § 2255 proceeding.

We discern no error as to Dennis's guilty plea to Count 9.

## III. SENTENCING

Dennis claims that the district court procedurally erred in sentencing him when it did not recognize its authority to vary downward on the sentence due to the 100:1 powder-to-crack cocaine sentencing ratio[2] and when it failed to consider offsets to the restitution amount.

We review the procedural reasonableness challenge based on the crack-cocaine disparity under the abuse-of-discretion standard. *See United States v. Battaglia*, 624 F.3d 348, 350 (6th Cir. 2010); *see also United States v. Priester*, 646 F.3d 950, 951-52 (6th Cir. 2011) (holding that plain error review was inappropriate where defendant conveyed to the lower court the substance of his argument that the court should vary from the Guidelines due to the crack-cocaine disparity). Under the abuse-of-discretion standard, the district court's legal interpretations are reviewed de novo, but the court's factual findings will not be set aside unless they are clearly erroneous. *United States v. Brooks*, 628 F.3d 791, 796 (6th Cir. 2011).

In 2009, the Supreme Court held that a district court can—based solely on its own policy disagreements—categorically reject the 100:1 powder-to-crack cocaine sentencing ratio and sentence a defendant to a lower sentence than called for by the Guidelines. *Spears v. United States*, 555 U.S. 261, 265-66 (2009). The district court did not have the benefit of *Spears* because it

_____

[2]The Fair Sentencing Act (FSA), passed in 2010, reduced the powder-to-crack cocaine disparity that Dennis complained of in 2007. Pub. L. 111-220, 124 Stat. 2372 (Aug. 3, 2010). Soon after passage of the FSA, the Supreme Court held that the FSA's more lenient penalties apply to those whose crimes preceded enactment of the FSA but who were sentenced after that date. *Dorsey v. United States*, 132 S. Ct. 2321, 2331 (2012). The question—whether for purposes of *Dorsey* Dennis was sentenced at his initial sentencing in 2007 or when the judgment was reimposed in 2013—was answered in *United States v. Hughes*, which held that when a sentence is vacated on appeal and the same sentence is reimposed on remand, *Dorsey* applies only if the *initial* sentence occurred after enactment of the FSA. 733 F.3d 642, 643 (6th Cir. 2013). *Dorse*y, therefore, does not apply to the present appeal.

sentenced Dennis in 2007. On several occasions, most recently in *Priester*, we have addressed claims under *Spears* that are similar to Dennis's claim. 646 F.3d at 951-53. At his pre-*Spears* sentencing hearing, the defendant in *Priester* asked the district court to sentence him below the Guidelines range because of the 100:1 disparity. *Id*. at 951. The court did not affirmatively say whether it had the authority to take the ratio out of play based on its own policy disagreements, but it acknowledged that a disparity existed in the Guidelines and referenced a recent change in the Guidelines. *Id*. at 952. Because these statements went "beyond mere silence," thus raising a question as to the court's assumptions about its later-granted authority under *Spears*, we remanded under abuse-of-discretion review so that the district court could decide for itself whether *Spears* would have made a difference. *Id*. at 951-53. "To say, on this record, that the court silently recognized its later-announced authority in *Spears*, but chose not to exercise that authority, would be mere fiction." *See Priester*, 646 F.3d at 952.

We have also addressed similar claims in three published cases where the sentencing court was entirely silent as to its own pre-*Spears* authority to take the disparity out of play. *United States v. Curb*, 625 F.3d 968, 970, 972-73 (6th Cir. 2010); *United States v. Simmons*, 587 F.3d 348, 363-65 (6th Cir. 2009); *United States v. Johnson*, 553 F.3d 990, 995-96 (6th Cir. 2009). In *Johnson*, we remanded because we had "no way of ascertaining" from the record whether the court would have imposed the same sentence in light of *Spears*. 553 F.3d at 996 n.1. Again, in *Curb*, we remanded for resentencing because "we [could ]not know from the sentencing transcript whether the district court would have imposed the same sentence . . . had it been aware of its authority to vary categorically . . . based on a policy disagreement with the 100:1 crack-to-powder ratio." 625 F.3d at 973. Only in *Simmons*, the second in this line of cases, did we refuse to remand. 587 F.3d at 365.

There, we said that the defendant could not show plain error where the court repeatedly recognized that the Guidelines were advisory but "provide[d] no indication that policy disagreements are not a proper basis to vary." *Id*. at 364-65. We later recognized in *Curb,* however*,* that this "express statement" rule from *Simmons* was in direct conflict with the "inability to ascertain" rule from *Johnson*. Because *Johnson* came first, we held that "Johnson, then, controls the standard for remand under . . . *Spears*." 625 F.3d at 973.

The present case is most closely analogous to *Priester* because the sentencing court's statements went "beyond mere silence" and were enough to raise a question about the court's understanding of its authority. After discussing the relevant statutory minimum of 120 months for Counts 7 and 9 combined, the court said:

> Really, there is not much to consider with regard to the drug offense and firearms. I am going to exclude that from the discussion simply because the statute provides the sentence for both of those. The question really becomes, with regard to crafting the right sentence, how to look at the health care fraud and related money laundering issue.

The statutory minimum was much lower than the Guidelines range of 157-180 months and did not restrict the court's authority under *Spears*. However, the "not much to consider" language suggests that the court believed it could not and would not consider anything else relevant to these drug and firearm offenses in the ensuing discussion. The court later said "I am to look at . . . the kind[] of sentence that the sentencing range established together with policy statements from the sentencing commission, the need to avoid unwarranted sentencing disparities with defendants of similar records." As the court had already explained, this recitation of the § 3553(a) factors "excluded" considerations relating to the drug offense. Moreover, any general acknowledgment of policy statements by the Sentencing Commission says nothing about whether the court's *own* policy

-14-

disagreements were relevant. We cannot say on this record that the court silently recognized its later-granted authority under *Spears*, and therefore must remand under *Priester*. *See Priester*, 646 F.3d at 952.

Even if we could construe the court's statements as "mere silence," we have "no way of ascertaining" from this record whether the court would have imposed the same sentence in light of *Spears*, and therefore remand would be appropriate under that construction based on *Johnson* and *Curb*. *Johnson*, 553 F.3d at 996 n.1; *see also Curb* 625 F.3d at 973. Whether or not the rule from *Simmons* has any continued viability, it does not apply here because—unlike in *Simmons*—the court below did not expressly acknowledge that the Guidelines are advisory and did not include the drug offense in the § 3553(a) discussion. *Simmons*, 587 F.3d at 364-65; *see also Curb*, 625 F.3d at 973 (holding that *Johnson*, not *Simmons*, controls the standard for remand under *Spears*).

We remand for the district court to determine for itself whether *Spears* would have made a difference. In this remand, we note no error in the district court's imposition of restitution. *See United States v. Freeman*, 640 F.3d 180, 186 (6th Cir. 2011) (specifying that plain error review applies where the defendant did not raise a procedural sentencing error below). Dennis's objection to the restitution amount seems to be that the court did not order the probation office to provide a more detailed statement of the amount of loss calculation. Dennis, however, admitted to the amount of loss by not objecting to this portion of the PSR. *See* Fed. R. Crim. P. 32(i)(3)(A) (noting that any undisputed portion of the PSR may be accepted as fact); *see also United States v. Williams*, 612 F.3d 500, 515-16 (6th Cir. 2010) (reviewing the defendant's claim regarding the district court's restitution findings only after establishing that the defendant had objected to the PSR). We will not disturb this portion of the sentence.

## IV. CONCLUSION

For the reasons explained above, we **AFFIRM** Dennis's guilty plea to Counts 7 and 9, but **REMAND** for resentencing in light of *Spears* and *Priester*.

**MCKEAGUE, Circuit Judge, concurring in part and dissenting in part**

While I agree with the majority that Dennis's Count 7 and 9 convictions should be affirmed, I do not believe the district court committed a procedural error in sentencing that warrants remand. This is not a case where the district court's intention is unclear. *See United States v. Curb*, 625 F.3d 968 (6th Cir. 2010). The district court clearly assumed that it had authority to deviate from the advisory guidelines range on policy grounds and correctly recognized that there were no grounds to depart from the lower statutory mandatory minimum with which it complied. Remand is therefore unnecessary. For the following reasons, I respectfully dissent from the analysis in Section III of the majority opinion.

The majority contends that we have "no way of ascertaining" what sentence the district court would have imposed if the district court had been aware of its ability to depart or vary from the sentencing guidelines based on policy considerations. The primary source of concern is the district court's statement that "[r]eally, there is not much to consider with regard to the drug offense and firearms. I am going to exclude that from the discussion simply because the statute provides the sentence for both of those." R. 50, Sentencing Tr. at 9. PageID # 252. When this language is read in context, I believe that it becomes readily apparent that the district court would have imposed the same sentence, even in light of *Spears*.

To begin, there simply can be no question as to whether the district court was aware of the policy arguments pertaining to the 100:1 crack-powder sentencing disparity. Dennis extensively discussed in his sentencing memorandum the policy reasons for a downward variance from the sentencing guidelines and indicated that the court could deviate from the sentencing guidelines "to avoid unwarranted sentencing disparities among defendants with similar records who have been

-17-

convicted of offenses involving crack cocaine." *See* Def. Sentencing Mem. at 6, 12–19, PageID # 132, 138–44. To support his contention that a variance was warranted, Dennis cited to the Sentencing Commission's policy statements and reports, which strongly indicate that crack is punished too heavily in comparison to cocaine, and to numerous circuit and district court cases where courts have varied from the guideline's range for policy reasons. *Id.*

Dennis reiterated these same points at the sentencing hearing. As his counsel explained to the court:

> I would just like the Court to consider the 18 U.S.C. 3553(a) factors, the disparity, which the argument is set forth in the sentencing memorandum, between crack cocaine and powder cocaine penalties, Your Honor. And I would ask the Court, to seriously consider a 120-month sentence which would represent the statutory minimum mandatory and *again is below the advisory guideline range*.

R. 50, Sentencing Tr. at 5, PageID # 248 (emphasis added). All of the evidence before us indicates that the district court in the present case, an experienced district judge, was extensively versed in the policy arguments favoring a downward departure. Additionally, the language above and the other references to the guideline's advisory nature combined with the court's express reference to *United States v. Booker*, 543 U.S. 220 (2005) indicate that the court knew the guidelines were not mandatory.

When the sentencing transcript is viewed in its entirety, it is clear that the district court never affirmatively stated or even hinted that it believed that the court lacked authority to deviate from the sentencing guidelines on the basis of a policy disagreement. Following Dennis's request for a 120-month sentence, the court stated, "[j]ust to be clear, Count 7 and Count 9 each carry five-year consecutive minimum sentences. Counts 2 and 4 do not." *Id.* Dennis's counsel stated that this was correct. As the district court's statement indicates, even excluding Counts 2 and 4, Dennis would

-18-

serve 120 months. Thus, by requesting only 120 months, Dennis sought to eliminate any punishment for Counts 2 and 4 beyond the mandatory minimum 120-month punishment for Counts 7 and 9. As the court explained shortly after this exchange:

> As we have discussed, Counts 7 and 9 carry mandatory minimum sentences of 60 months for a total of 120. And that's of some moment to the Court because that would be imposed *even if there were no* health care fraud or money laundering. That's a factor that seems *to be important in the way this case should be analyzed* for the appropriate sentence.

*Id.* at PageID # 250–51 (emphasis added). The district court then began its § 3553 (a) analysis and indicated that it would first consider the nature and circumstances of the offense. It was only at this moment that the court stated:

> Really, there is not much to consider with regard to the drug offense and firearms. I am going to exclude that from the discussion simply because the statute provides the sentence for both of those. The question really becomes, with regard to crafting the right sentence, how to look at the health care fraud and related money laundering issue. There was a lot of money involved. There was a long period of time that the fraudulent billing occurred. The scheme was complex and aggravated.

*Id.* at PageID # 252. Contrary to the majority's suggestion, in no way does the line "there is not much to consider" affirmatively indicate that the court believed it was prohibited from considering policy disagreements as grounds to vary from an otherwise applicable advisory guideline range. Instead, the record clearly shows that the district court was recognizing that the statutory floor imposed a limit on the minimum punishment for Counts 7 and 9. This is why the district court referred to what the "statute provides," not what the guidelines provide. *Id.* Under these circumstances, it is clear that the court was only expressing its belief that a sentence of at least 120 months was *required* for Counts 7 and 9, irrespective of its disagreement with the policy represented by the crack-cocaine ratio and irrespective of its "presumed" authority to vary downward from any otherwise applicable advisory guideline range.

-19-

The only question then that remained was what additional punishment should be levied for the money laundering offense and the aggravated and complex health care fraud which cost the federal government $564,630. Effectively, the district court imposed a 37-month sentence for Count 2, Health Care Fraud and Count 4, Money Laundering. Both Counts 2 and 4 are class C felonies and each is punishable by up to 10 years in prison. The district court's determination that such serious felonies should be punished and require deterrence in their own right, beyond the minimum punishment mandated by Congress for Counts 7 and 9, was not an abuse of discretion, especially considering that Dennis's overall punishment of 157 months was at the very bottom of the overall advisory guideline range (157 to 180 months) and conformed to the recommendation in the presentence report. Presentence Rep. at 21.

In sum, the crack-cocaine disparity issue was thoroughly brought to the sentencing court's attention, and the district court considered the Sentencing Commission's policy statements and recognized the advisory character of the guidelines by citing to *Booker*. The district court did not in any way state or imply that a policy disagreement was not a proper basis to vary and the suggestion that the court's conduct went "beyond mere silence" misinterprets the record. *See United States v. Simmons*, 587 F.3d 348, 364 (6th Cir. 2008) ("[W]hen a district court observes that the Guidelines are advisory and provides no indication that policy disagreements are not a proper basis to vary, then a sentence within the Guidelines range remains presumptively reasonable on appeal.").[1]

---

[1] I find perplexing the majority's open ended query, regarding "[w]hether or not the rule from *Simmons* has any continued viability." *Simmons* has not been overturned en banc, and therefore, remains Sixth Circuit precedent. Moreover, the very cases that the majority cites, most notably *Curb*, extensively discuss *Simmons* and "harmonize" it with *Johnson*, rather than erasing the case's "viability." *See Curb* 625 F.3d at 973 (discussing the interaction of *Johnson* and *Simmons*). Furthermore, subsequent courts, including the *Priester* court, have discussed and distinguished *Simmons*, reflecting the case's continuing relevance and importance. *Priester*, 646 F.3d at 952. Any

To the contrary, what the district court said that goes beyond "mere silence" indicates that the court assumed it had authority to vary downward and gave defendant Dennis every benefit of his argument by exercising that authority to impose the most lenient prison sentence permitted by law for his cocaine base manufacturing offense. One cannot help but question what magic words the district court, writing before *Spears*, should have presciently stated to have clarified its cognizance of its authority to deviate on policy grounds, or how the court could have more clearly stated that the statutory minimum of 120 months was the appropriate sentence for the drug and firearms offense even in light of the crack-cocaine policy arguments. Because we are able to ascertain from the record that the district court would have imposed the same sentence even if it were to have expressly recognized what it impliedly assumed, remand for resentencing is a patent waste of judicial time and resources. I therefore dissent.

---

suggestion of *Simmons*' demise is premature.